**DIXON FINANCIAL SERVICES, LTD. and Hyperdynamics Corporation, Appellants,**

v.

**James CHANG, Nick H. Johnson, Riley L. Burnett, Jr., and Johnson, Burnett & Chang, L.L.P., Appellees.**

No. 01–07–00233–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 18, 2010.

Gary Martin Jewell, Christian, Smith & Jewell, L.L.P., Jennifer Bruch Hogan, Richard P. Hogan, Jr., Hogan & Hogan, L.L.P., Phillip R. Livingston, Livingston & Livingston, L.L.C., William T. Powell, The Law Office of William T. Powell, Houston, TX, for appellants.

Philip Werner, Scott E. Raynes, Werner & Kerrigan, James Scott Douglass, Gerald Scott Siegmyer, Siegmyer, Oshman & Bissinger LLP, Houston, TX, for appellees.

Panel consists of Justices JENNINGS, KEYES, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

We withdraw our August 31, 2009 opinion, substitute this opinion in its place, and vacate our judgment of that date.[1]

In one issue, appellants, Dixon Financial Services, Ltd. ("Dixon Financial") and Hyperdynamics Corporation ("Hyperdynamics"), contend that the trial court erred by granting summary judgment in favor of appellees, James Chang, Nick H. Johnson, Riley L. Burnett, Jr., and Johnson, Burnett & Chang, L.L.P.

We affirm.

---

1. We originally issued our opinion and judgment in this appeal on August 31, 2009. One week later, we were informed by one of the defendants/appellees, Bill Knollenberg, that he had filed Chapter 7 bankruptcy prior to the issuance of our opinion. As a result of the bankruptcy filing, the appeal was suspended, see Tex.R.App. P. 8.2, and our opinion and judgment of August 31, 2009 are void. See Continental Casing Corp. v. Samedan Oil Corp., 751 S.W.2d 499, 501 (Tex.1988). Thereafter, the appellees, who are identified above in this appeal, filed a motion to sever appellants' appeal of the judgment with respect to Knollenberg and appellee, Erin Oil

Exploration, of which Knollenberg is the principal, and to reinstate this appeal. See Tex. R.App. P. 8.3. By separate order, the motion was granted, and the appellants' appeal against Knollenberg and Erin Oil was severed into appellate cause number 01–01–10–00033–CV. See Ma–Stell, Inc. v. Anadarko E & P Co., No. 10–03–00358–CV, 2005 WL 984785, at *1 (Tex.App.-Waco Apr. 27, 2005, order). This appeal, as styled above, was ordered reinstated. See id. Although our August 31, 2009 opinion and judgment are void, we state herein that the opinion is "withdrawn" and the judgment is "vacated" for purposes of clarification and administration.

## Background[2]

In September 1999, Ron Bearden and R.F. Bearden Associates, Inc. (collectively, "Bearden"), Erin Oil, and Bill Knollenberg, principal of Erin Oil, obtained an arbitration award against Michael Watts, a securities broker, and Texas Capital Securities, the securities brokerage firm for whom Watts worked. As part of the award, Bearden, Knollenberg, and Erin Oil were awarded, jointly and severally, "140,000 shares of common stock and 200,000 warrants in Hyperdynamics." In the arbitration proceeding, Greenberg, Peden, Siegmyer & Oshman, P.C. ("Greenberg Peden") represented Bearden, and the law firm of Johnson, Burnett, & Chang ("JBC") represented Erin Oil and Knollenberg.

In an effort to collect the arbitration award, JBC attorney James Chang notified Hyperdynamics's transfer agent, Fidelity Transfer Company ("Fidelity"), of the award. Chang sent a number of correspondences to Fidelity to secure his clients' interest in the Hyperdynamics stock by instructing Fidelity that the subject stock should not be transferred or conveyed. Chang told Fidelity that "some of [the] securities of [Hyperdynamics] that our client is entitled to in accordance with the [arbitration award] are held or deposited in an account in the name of Island Communications Investments, Ltd." Chang warned Fidelity that it should not transfer or convey common stock or other securities held or owned by Island Communications.

Chang, on behalf of Erin Oil and Knollenberg, and Greenberg Peden attorney Gerald Siegmyer, on behalf of Bearden, filed suit ("the *Watts* litigation") against Texas Capital, Michael Watts, and Hyperdynamics, seeking confirmation of the arbitration award and injunctive relief. Erin Oil, Knollenberg, and Bearden ("the *Watts* plaintiffs") alleged that Watts had sold securities belonging to them for Watts's own personal benefit. The *Watts* plaintiffs further alleged that Watts had transferred shares of Hyperdynamics stock, to which they were entitled, into the account of Island Communications. The *Watts* plaintiffs obtained a temporary restraining order restricting the transfer of Hyperdynamics stock out of Island Communications's account.

The *Watts* plaintiffs entered into a settlement agreement with Hyperdynamics in the *Watts* litigation. The *Watts* plaintiffs agreed to dismiss Hyperdynamics from the suit, and Hyperdynamics agreed that it would not allow Michael Watts "to sell, transfer, assign or exercise any warrant or option to purchase any securities of HyperDynamics."

Chang tried unsuccessfully to obtain information from Fidelity regarding which Hyperdynamics stock being held in Island Communications's name belonged to his clients. Fidelity informed Chang that Kent Watts, principal of Hyperdynamics and brother of Michael Watts, had requested the transfer of 574,500 shares of Hyperdynamics stock held in Island Communications's name to Dixon Financial. Chang informed Fidelity that "there were adverse claimants to those shares held in the name of Island and that [Hyperdynamics] may be prohibited from transferring any shares in the name of Island."

Approximately one year later, Dixon Financial filed the underlying suit against Hyperdynamics, Fidelity, Greenberg Peden, Siegmyer, Bearden, Erin Oil, Knollen-

---

2. A detailed factual background of this case is also described in *Dixon Financial Services, Ltd. v. Greenberg, Peden, Siegmyer & Oshman,* P.C., No. 01–06–00696–CV, 2008 WL 746548 (Tex.App.-Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op.).

berg, James Chang, JBC, and two other JBC partners: Nick Johnson and Riley Burnett, Jr.[3] Dixon Financial asserted that Chang and his "co-conspirators" had falsely claimed and misrepresented that Dixon Financial's stock shares held in the name of Island Communications were subject to the arbitration award obtained by the *Watts* plaintiffs. Specifically, Dixon Financial alleged that Chang had misrepresented to Fidelity that "the 574,500 shares of stock of Hyperdynamics held in the name of Island Communications was in fact property of Chang and Siegmyer's clients and the subject of an arbitration award." Dixon Financial further alleged that, based on the misrepresentation, Fidelity had "placed a 'hold' on the 574,500 shares of Hyperdynamics stock" owned by Dixon Financial thereby preventing Dixon Financial "from exercising any ownership rights to the stock, including its ability to sell the stock at a time when the stock was trading large volume at a higher price."

Dixon Financial also claimed that "[t]he defendants intentionally and knowingly misrepresented facts to the court in order to obtain the Temporary Restraining Order" in the *Watts* litigation. Dixon Financial asserted that the restraining order was "sought and obtained" by "using a false and perjurious affidavit signed by Chang." Dixon Financial further alleged that Chang, "with the knowledge and consent of his co-conspirators [including Bearden, Greenberg Peden, and Siegmyer], intentionally and knowingly on numerous times contacted Fidelity . . . and wrongfully advised [Fidelity]" that the temporary restraining order "prohibited Fidelity" from issuing the Hyperdynamics stock to Dixon Financial. Dixon Financial further alleged that, when Fidelity finally transferred the stock to it, the stock "had

dropped from a high in January 2000 of $7.75 per share when Dixon Financial was entitled to receive the shares to less than $2.00 resulting in a loss [to Dixon Financial] in excess of $3,000,000."

Dixon Financial asserted causes of action against Bearden, Greenberg Peden, Siegmyer, Erin Oil, Chang, JBC, Nick Johnson, and Riley Burnett, Jr. for conversion, abuse of process, tortious interference, and fraud. Dixon Financial claimed that the defendants were jointly and severally liable based on theories of conspiracy, agency, and concert of action.

Hyperdynamics also filed a cross-claim against Bearden, Greenberg Peden, Siegmyer, Erin Oil, Chang, JBC, Johnson, and Burnett asserting claims for negligent misrepresentation, tortious interference, abuse of process, malicious prosecution of a civil suit, and contribution. Like Dixon Financial's claims, Hyperdynamics's cross-claims were premised on allegations that Chang had misrepresented to the trial court and to Fidelity the extent to which the arbitration award applied to Hyperdynamics's stock held in the name of Island Communications.

Hyperdynamics also filed a cross-claim for breach of contract. Hyperdynamics asserted that the defendants had breached the settlement agreement between it, Erin Oil, and Bearden in the *Watts* litigation. Hyperdynamics claimed that the defendants continued to interfere with the transfer of its stock to Dixon Financial "in violation of the spirit and terms of the agreement."

Greenberg Peden and Siegmyer filed motions for summary judgment, asserting that Dixon Financial had no actionable claim against them, as a matter of law, for conduct undertaken in the representation

---

**3.** Dixon Financial also sued Fidelity. The trial court granted Fidelity's special appearance, and it was dismissed based on lack of personal jurisdiction.

of a client. The attorneys based the motions for summary judgment on Dixon Financial's pleadings. Concomitantly, Bearden filed a motion for summary judgment contending that, as a matter of law, it could not be liable for the conduct of its attorneys.

Chang, JBC, Johnson, and Burnett (collectively hereinafter "the JBC defendants") also filed a motion for summary judgment. Like Greenberg Peden, the JBC defendants asserted that Dixon Financial failed to state an actionable claim. The JBC defendants pointed out that, as pled, Dixon Financial's claims were premised on conduct undertaken in the representation of JBC's clients during litigation and was therefore privileged. Greenberg Peden, Siegmyer, and the JBC defendants also filed a joint motion for summary judgment against Hyperdynamics, which asserted this same argument with respect to Hyperdynamics's tort claims. The joint motion for summary judgment also raised a no-evidence challenge, asserting that Hyperdynamics could present no evidence of damages, an essential element of its crossclaims, including its breach of contract claim.

The trial court granted each of the motions for summary judgment. Greenberg Peden, Siegmyer, and Bearden ("the Greenberg Peden defendants") requested the trial court to sever Dixon Financial's and Hyperdynamics's claims against them from the remainder of the case. In May 2006, the trial court granted the severance converting the order granting summary judgment in favor of the Greenberg Peden defendants into a final, appealable judgment. The JBC defendants did not seek a severance of Dixon Financial's and Hyperdynamics's claims against them. The order granting the JBC defendants' motion for summary judgment remained interlocutory. In addition, Dixon Financial's and

Hyperdynamics's claims against Knollenberg and Erin Oil remained in the trial court.

In appellate cause number 01–06–00696–CV, Dixon Financial and Hyperdynamics appealed the summary judgments granted by the trial court in favor of the Greenberg Peden defendants. We affirmed the summary judgments obtained by the Greenberg Peden defendants against Dixon Financial and Hyperdynamics in *Dixon Financial Services, Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01–06–00696–CV, 2008 WL 746548 (Tex.App.-Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op.). There, we discussed the law regarding an attorney's immunity from suit with respect to action he takes in the representation of a client. *See id.* at *7–8. We recognized that to promote zealous representation, courts have held that an attorney has "qualified immunity" from civil liability, with respect to nonclients, for actions taken in connection with representing a client in litigation. *Id.* at *7 (citing *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.-Houston [1st Dist.] 2005, pet. denied)).

We agreed with the Greenberg Peden defendants that the conduct alleged by Dixon Financial and Hyperdynamics as being tortious was not actionable because it constituted conduct undertaken by an attorney to assist a client in securing and recovering an arbitration award. *See id.* at *11. For this reason, we concluded that the Greenberg Peden defendants were entitled to summary judgment as a matter of law. *Id.*

As mentioned, Dixon Financial's and Hyperdynamics's claims against Knollenberg and Erin Oil remained pending in the trial court, as did the interlocutory order granting summary judgment in favor of the JBC defendants. On February 22,

2007, the trial court signed a "Final Judgment" addressing the remaining claims.

The Final Judgment reflected that the trial court conducted a jury trial between January 29, 2007 and February 1, 2007. The judgment recited that Knollenberg, who had previously appeared in the lawsuit pro se and had notice of the trial setting, did not appear at trial. The judgment reflected that, after receiving proper service, Erin Oil never filed an answer or otherwise appeared.

In the Final Judgment, the trial court ordered that the interlocutory summary judgments obtained by the JBC defendants against Dixon Financial and Hyperdynamics became final. The Final Judgment also ordered that a default judgment be entered against Erin Oil and Knollenberg and that Dixon Financial and Hyperdynamics recover damages from both entities.

After the trial court signed the Final Judgment, Knollenberg retained counsel and filed a "Motion to Modify the Judgment, or in the Alternative, for Entry of Judgment N.O.V." In the motion, Knollenberg challenged the portions of the Final Judgment awarding damages against him in favor of Dixon Financial and Hyperdynamics on the basis that Dixon Financial and Hyperdynamics had non-suited their respective claims against him two years earlier in April 2005. The trial court conducted two hearings and, on May 22, 2007, signed an "Amended Judgment," which provided, in relevant part, that Dixon Financial and Hyperdynamics had non-suited Knollenberg two years earlier. In the Amended Judgment, the trial court also ordered that Dixon Financial and Hyperdynamics take nothing against Erin Oil.

Dixon Financial and Hyperdynamics appealed the Amended Judgment.

As discussed *supra* in footnote one, we issued an opinion and judgment in this appeal on August 31, 2009. In the opinion, we affirmed the summary judgments in favor of the JBC defendants. We reversed the portions of the Amended Judgment in favor of Knollenberg and Erin Oil, and remanded the case to the trial court with respect to the claims against Knollenberg and Erin Oil.

One week after our opinion issued, we were informed by Knollenberg that he had filed Chapter 7 bankruptcy prior to the issuance of our opinion. The bankruptcy filing resulted in the suspension of this appeal. *See* TEX.R.APP. P. 8.2. And due to the filing of the petition, our opinion and judgment of August 31, 2009 are void. *See Continental Casing Corp. v. Samedan Oil Corporation*, 751 S.W.2d 499, 501 (Tex. 1988).

On September 21, 2009, JBC defendants filed a motion to sever Dixon Financial's and Hyperdynamics's appellate claims against Knollenberg and Erin Oil into a separate appellate cause and to reinstate this appeal. *See* TEX.R.APP. P. 8.3. By separate order, the motion to sever and to reinstate was granted. Dixon Financial's and Hyperdynamics's appeal of the Amended Judgment, with respect to their claims against Knollenberg and Erin Oil, was severed into appellate cause number 01–10–00033–CV.[4] *See Ma–Stell, Inc. v. Anadarko E & P Co.*, No. 10–03–00358–CV, 2005 WL 984785, at *1 (Tex.App.-Waco Apr. 27, 2005, order). This appeal, i.e., Dixon Financial's and Hyperdynamics's appeal of the summary judgments in

4. As a result of the severance, the appeal with respect to Knollenberg and Erin Oil, No. 01–10–00033–CV, remains suspended, pending the resolution of the bankruptcy proceeding.

*See Vaughn v. Ford Motor Co.*, 91 S.W.3d 387, 388 n. 1 (Tex.App.-Eastland 2002, pet. denied).

favor of the JBC defendants, was ordered reinstated. *See id.*

With this background, we now address the merits of the appeal.

### Summary Judgments

In their sole issue, Dixon Financial and Hyperdynamics challenge the summary judgments obtained by the JBC defendants against Dixon Financial and Hyperdynamics.

### A. Summary Judgment Against Dixon Financial

The JBC defendants sought summary judgment against Dixon Financial on the basis that Dixon Financial had failed to plead an actionable claim against them.

Pointing to the allegations in Dixon Financial's pleadings, the JBC defendants asserted that Dixon Financial's claims were premised on conduct undertaken by an attorney in the representation of his clients during litigation. The JBC defendants argued that such conduct is privileged conduct for which attorneys are immune from suit by non-clients.

The Greenberg Peden defendants asserted this same legal argument in support of their motion for summary judgment in the severed action. *See Dixon Fin.,* 2008 WL 746548, at *6. Dixon Financial premised its claims against the Greenberg Peden defendants on the same conduct by the same actors, primarily James Chang, as it based its claims against the JBC defendants. As described *supra,* this Court upheld Greenberg Peden's summary judgment against Dixon Financial based on the same principle of law (i.e., an attorney's qualified immunity from suit by a non-client for litigation conduct) that the JBC defendants asserted to support their motion for summary judgment at issue here. *See id.* at *5, 11. We held, based on qualified immunity, that the Greenberg

Peden defendants could not be held liable, as a matter of law, for the conduct alleged by Dixon Financial. *See id.* at *11. Dixon Financial filed a petition for review with the Supreme Court of Texas, which has been denied.

 Our earlier decision on this issue governs our decision in this appeal. The "law of the case" doctrine mandates that the ruling of an appellate court on a question of law raised on appeal will be regarded as the law of the case in all subsequent proceedings, unless clearly erroneous. *Briscoe v. Goodmark Corp.,* 102 S.W.3d 714, 716 (Tex.2003). The doctrine applies when the issues of law and fact are substantially the same in the second proceeding as they were in the first. *See Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex. 1986).

As discussed, the issues of law and fact in this appeal, with regard to determining the propriety of the summary judgment in favor of the JBC defendants, are the same as those involved in the earlier appeal with respect to the summary judgment granted in favor of the Greenberg Peden defendants. We follow our holding in that appeal and conclude that the JBC defendants cannot be held liable, as a matter of law, for the conduct pled by Dixon Financial. *See Sledge v. Mullin,* 927 S.W.2d 89, 93 (Tex.App.-Fort Worth 1996, no writ) (determining that holding in earlier appeal, in severed part of case, was binding on determination of issue in later appeal of remainder of case). We hold that the trial court properly granted summary judgment in favor of the JBC defendants against Dixon Financial.

### B. Summary Judgment Against Hyperdynamics

Hyperdynamics challenges the summary judgment obtained by the JBC defendants with regard to its breach of contract claim.

In the instant litigation, Hyperdynamics alleged that the signatories and their attorneys breached the February 4, 2000 settlement agreement ("the Agreement") signed in the *Watts* litigation. Pursuant to the terms of the Agreement, Hyperdynamics agreed to prevent Michael Watts from conveying or transferring Hyperdynamics securities. In return, Erin Oil, Knollenberg, and Bearden agreed to, and then did, dismiss Hyperdynamics from the *Watts* litigation.

In its cross-action, Hyperdynamics alleged that "[n]othwithstanding the agreement and the dismissal of all claims [against Hyperdynamics], [the cross-defendants] continued to communicate with Fidelity Transfer for the express purpose of preventing Fidelity Transfer from transferring specific shares into free trading shares in Dixon." Hyperdynamics continued, "In the course of those communications, [the cross-defendants] continued to assert that Hyperdynamics was restrained from transferring these shares to Dixon." Hyperdynamics alleged that such communications violated "the spirit and terms of the agreement."

The joint motion for summary judgment filed by the cross-defendants to Hyperdynamics's claims was a traditional motion for summary judgment, asserting the qualified immunity privilege, and a no-evidence motion for summary judgment. The no-evidence motion for summary judgment averred that "Hyperdynamics has offered no evidence of any actual damages suf-

fered," an essential element of each of Hyperdynamics's cross-claims, including its breach of contract claim.

Hyperdynamics responded to the no-evidence motion for summary judgment by asserting that it had sustained damages as a result of breach. Particularly, Hyperdynamics claimed that it continued to incur legal fees and expenses after its dismissal from the *Watts* litigation as a result of the breach. Hyperdynamics also alleged that it had "suffered" damages because Fidelity had sent it a demand letter to pay its legal fees in the instant litigation.

To support its damages allegations, Hyperdynamics offered the affidavit of its attorney, David Sacks, and the affidavit of its president, Kent Watts. The cross-defendants, including the JBC defendants, objected to and moved to strike the affidavits. Sustaining the defendants' objections, the trial court signed an order striking all evidence offered in support of Hyperdynamics's response, including the Sacks and Watts affidavits.

The trial court granted summary judgment against Hyperdynamics on its cross-claims without identifying the basis for its ruling. On appeal, Hyperdynamics contends that the trial erred by striking the affidavits and by granting summary judgment against it on its breach of contract cross-claim.

### 1. Standard of Review: No–Evidence Motion for Summary Judgment[5]

---

5. As mentioned, the joint motion for summary judgment against Hyperdynamics asserted both traditional and no-evidence grounds for summary judgment. When a party moves for both types of summary judgment, we will first review the trial court's judgment under the no-evidence standard. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004). If a non-movant failed to produce evidence to defeat the motion for summary judgment, then we need not analyze whether the mov-

ant's summary judgment proof satisfied the less stringent "traditional" burden. *Id.* In addition, when, as here, the order granting summary judgment does not specify the grounds for the trial court's ruling, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex.2003).

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005).

A party seeking a no-evidence summary judgment contends that there is no evidence of one or more essential elements of a claim on which an adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex.2008). Summary judgment must be granted unless the non-movant produces competent summary judgment evidence raising a genuine issue of material fact on the challenged elements. Tex.R. Civ. P. 166a(i); *Hamilton*, 249 S.W.3d at 426. A non-moving party is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." Tex.R. Civ. P. 166a (Notes & Comments 1997). This means that the non-movant must point to *some*, but not *all*, evidence supporting challenged elements. *Cmty. Initiatives, Inc. v. Chase Bank*, 153 S.W.3d 270, 280 (Tex.App.-El Paso 2004, no pet.).

A no-evidence summary judgment motion is essentially a motion for a pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex.2006). Accordingly, we apply the same legal-sufficiency standard of review that is applied when reviewing a directed verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005). Applying that standard, a no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003); *see City of Keller*, 168 S.W.3d at 810.

We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller*, 168 S.W.3d at 822). In so doing, we view the summary judgment evidence in the light most favorable to the party against whom summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks*, 206 S.W.3d at 582; *City of Keller*, 168 S.W.3d at 822.

Applying these principles, we determine whether Hyperdynamics offered competent summary judgment evidence to raise a genuine issue of material fact regarding whether it incurred damages as a result of the alleged breach of the Agreement.[6] We need not decide whether the trial court properly sustained the objections to Hyperdynamics's summary judgment evidence because, even with this evidence, we conclude that Hyperdynamics did not meet its burden to offer sufficient evidence on the challenged element of actual damages.

**2. Analysis of Evidence Offered to Show Breach–of–Contract Damages**

On appeal, Hyperdynamics points to the affidavit of its attorney, David Sacks, who represented Hyperdynamics in the *Watts* litigation, as evidence of its breach of contract damages. Hyperdynamics contends that the Sacks affidavit shows that it incurred attorney's fees as actual damages

---

**6.** Hyperdynamics does not dispute that showing that damages resulted from the breach is an essential element of its breach of contract claim. *See Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex.App.-Houston [1st Dist.] 1995, no writ).

as a result of the breach of the February 4, 2000 settlement agreement.

In his affidavit, David Sacks, testified as follows, with regard to damages:

As part of the representation of Hyperdynamics in the Injunction Lawsuit [the *Watts* litigation], I charged and invoiced [Hyperdynamics] for the attorney's fees and expenses incurred. After the Agreement of February 4, 2000, I continued to represent Hyperdynamics in its efforts to aid the transfer of shares into Dixon. I invoiced my client for my time and expenses for this representation as well. My total fees and expenses were at least $30,000.00. These attorneys fees and expenses would not have been incurred, but for the conduct of the Erin Oil plaintiffs during the Injunction Lawsuit and after the Agreement of February 4, 2000.

■ Unless expressly provided for by statute or by contract, attorney's fees incurred in the defense or prosecution of a lawsuit are generally not recoverable. *Turner v. Turner*, 385 S.W.2d 230, 233 (Tex.1964). This general rule is not without exception. Equitable principles allow the recovery of attorney's fees as actual damages when a party was required to prosecute or defend a prior legal action as a consequence of a wrongful act of the defendant. *Turner*, 385 S.W.2d at 234; *Massey v. Columbus State Bank*, 35 S.W.3d 697, 701 (Tex.App.-Houston [1st Dist.] 2000, pet. denied); *Lesikar v. Rappeport*, 33 S.W.3d 282, 306 (Tex.App.-Texarkana 2000, pet. denied). For the equitable exception to apply, the following two prerequisites must be met: (1) the plaintiff must have incurred the attorney's fees in a prior action and (2) the action must have involved a third party. *Turner*, 385 S.W.2d at 234. From Sacks's affidavit, it is not clear that the claimed fees were incurred in the defense or prosecution of a

prior action involving a third party. As described, the claimed fees were incurred in relation to the *Watts* litigation. The claimed attorney's fees were not incurred in litigation with a third person, rather, the fees were incurred following litigation with Hyperdynamics' present adversaries in this litigation. *See id.* at 237.

■ To obtain attorney's fees as actual damages, the plaintiff must also show that the claimed attorney's fees were reasonable and necessary. *See id.* at 234; *Lesikar*, 33 S.W.3d at 306; *Powell v. Narried*, 463 S.W.2d 43, 46 (Tex.Civ.App.-El Paso 1971, writ ref'd n.r.e.). As pointed out by the JBC defendants, the Sacks affidavit makes no showing that any attorney's fees incurred as a result of the alleged breach of the Agreement were reasonable or necessary. *See Lesikar*, 33 S.W.3d at 308 (reversing award of attorney's fees as actual damages on legal sufficiency ground because no evidence was offered to show reasonableness of attorney's fees). Nor does Sacks's affidavit testimony make any attempt to segregate the amount of fees attributable to alleged breach of the Agreement and those incurred defending against the *Watts* litigation. *See Powell*, 463 S.W.2d at 46 (sustaining appellant's challenge to award of attorney's fees as damages because no evidence offered to show reasonableness of fees and no attempt made to segregate attorney's fees pertaining only to defense of action brought by third party). Applying the no-evidence standard within the context of the principles governing attorney's fees as damages, we conclude that Sacks's testimony falls short of being competent summary judgment evidence to raise a genuine fact issue regarding whether Hyperdynamics sustained actual damages as a result of the alleged breach of the Agreement.

■ Hyperdynamics also relies on the affidavit of its president, Kent Watts. On appeal, Hyperdynamics cites the following provision of the Watts affidavit:

As a result of the underlying injunction action [the *Watts* litigation], Hyperdynamics was compelled to retain counsel to represent it. It incurred legal fees and expenses through that counsel of at least $30,000. In addition, Hyperdynamics' agreement with its transfer agent includes the right of the transfer agent to seek to recover its costs and attorney's fees from any dispute or litigation in which the transfer agent becomes involved. Fidelity Transfer has made demand upon Hyperdynamics for payment of the attorney's fees and expenses it may incur in this lawsuit. See exhibit "1" attached which is a true and correct copy of a letter from Fidelity Transfer seeking reimbursement of its attorney's fees and expenses. Those damages are in addition to the damages sought by Dixon in this lawsuit and the attorneys [sic] which are accruing for Hyperdynamics' involvement in this lawsuit.[7]

In the letter attached to Watts's affidavit, Fidelity informed Hyperdynamics that it "had been forced to retain local council [sic] in Houston" with regard to the instant suit filed by Dixon Financial in which Fidelity was a named defendant. The letter requested that Hyperdynamics "overnight" a check for $3,000 to Fidelity.

On appeal, Hyperdynamics contends that Fidelity's demand for monies to cover its attorney's fees that it "may incur" is

evidence that Hyperdynamics itself incurred damages as a result of the breach of the Agreement. The important aspect of the Watts affidavit is not, however, what is says, but what it does not say. Watts never states that Hyperdynamics paid Fidelity's attorney's fees, planned to pay the fees, or felt legally obligated to pay the fees. Nor does the affidavit indicate how Fidelity's attorney's fees incurred in the present litigation are attributable to the alleged breach of the Agreement. To the contrary, Fidelity was sued in this lawsuit by Dixon Financial for its own alleged tortious acts.

The Supreme Court of Texas has explained, "[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)). To raise a genuine issue of material fact, the evidence must transcend mere suspicion. *Id.* Evidence that is so slight as to make any inference a guess is in legal effect no evidence. *Id.* Here, Watts's affidavit testimony does nothing more than raise a surmise or suspicion that Hyperdynamics incurred damages as a result of the alleged breach of the Agreement. Any inference made from Watts's testimony that Hyperdynamics sustained damages attributable to the alleged breach would be purely speculative. *See id.* Accordingly, the Watts affidavit

---

**7.** Similar to the Sacks's affidavit, Watts averred that Hyperdynamics incurred legal expenses defending the *Watts* litigation and as a result of the alleged breach of the Agreement. Hyperdynamics does not focus on this portion of the Watts affidavit on appeal. Like Sacks's affidavit, Watts's affidavit constitutes "no evidence" in this regard because it does

not discuss the reasonableness of the attorney's fees and does not identify which fees resulted from the alleged breach of the Agreement. *See Lesikar v. Rappeport*, 33 S.W.3d 282, 306 (Tex.App.-Texarkana 2000, pet. denied); *Powell v. Narried*, 463 S.W.2d 43, 46 (Tex.Civ.App.-El Paso 1971, writ ref'd n.r.e.).

constitutes "no evidence" of damages. *See id.*

Taken either individually or together, the affidavits do not constitute legally sufficient evidence to prevent a no-evidence summary judgment on grounds of lack of breach of contract damages. *See Mack Trucks*, 206 S.W.3d at 583. Hyperdynamics did not meet its burden to defeat the JBC defendants' summary judgment contention that no evidence existed to support the actual-damages element of Hyperdynamics's breach of contract claim. We hold that the trial court properly granted summary judgment in favor of the JBC defendants with respect to Hyperdynamics's breach of contract claim.

We overrule Dixon Financial's and Hyperdynamics's sole issue.

## Conclusion

We affirm the portion of trial court's judgment that grants summary judgment in favor of the JBC defendants against Dixon Financial and Hyperdynamics.

Justice JENNINGS, dissenting in part.

TERRY JENNINGS, Justice, dissenting in part.

The majority errs in holding that an attorney, "based on qualified immunity," cannot be held liable, as a matter of law, for fraudulently misrepresenting to a stock transfer agent that the attorney's client, pursuant to an arbitration award, had ownership rights to shares of stock which were, in fact, wholly owned by another. The majority's holding extends qualified immunity for attorneys beyond its logical bounds and contradicts the Texas Supreme Court's express holding that an attorney may be held liable for negligent misrepresentations made to a non-client. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787,

788–95 (Tex.1999) (applying RESTATEMENT (SECOND) OF TORTS § 552).

Accordingly, I respectfully dissent from the portion of this Court's judgment affirming the trial court's summary judgment against appellant, Dixon Financial Services, Ltd. ("Dixon"), in its lawsuit against appellees, James Chang, Nick Johnson, Riley Burnett, and Johnson, Burnett & Chang, L.L.P. ("JBC"). I otherwise join the remainder of the majority opinion and this Court's judgment.

## Factual and Procedural Background

In their third amended original petition, appellants, Dixon and Hyperdynamics Corporation ("Hyperdynamics"), allege that appellees, Chang, Johnson, Burnett, and JBC, while representing Erin Oil Exploration, Inc. ("Erin Oil"), contacted Fidelity Transfer Company ("Fidelity") and misrepresented that "574,500 shares of Hyperdynamics stock ... [were] in fact the property of [Erin Oil] and the subject of an arbitration award." However, Chang knew that "at most, only 60,000 shares of Hyperdynamics stock ... could be owned by any of the parties to that litigation."

Relying on Chang's misrepresentations, Fidelity placed a "hold" on all 574,500 shares of Dixon's Hyperdynamics stock, which prevented Dixon "from exercising any ownership rights to the stock, including its ability to sell the stock at a time when the stock was trading large volume at a higher price." Specifically, Dixon and Hyperdynamics allege that Dixon had intended to sell its Hyperdynamics stock in January 2000, when the stock was worth approximately $4.45 million. Dixon was able to sell its stock only after "Chang and his co-conspirators admitted to Fidelity that the stock truly belonged to Dixon" and its value had dropped to less than $1.15 million.

In their summary judgment motion, Chang, Johnson, Burnett, and JBC asserted that all of Dixon's "causes of action should be dismissed as barred by absolute privilege: an attorney's conduct undertaken in the context of litigation is not actionable." The trial court granted summary judgment against Dixon and in favor of Chang, Johnson, Burnett, and JBC.[1]

## Qualified Immunity

In its first issue, Dixon argues that the trial court erred in granting summary judgment in favor of Chang, Johnson, Burnett, and JBC because they do not, as a matter of law, enjoy qualified immunity for fraudulently misrepresenting to Fidelity that Dixon's shares of Hyperdynamics stock were subject to an arbitration award.

When a party moves for summary judgment based solely on the nonmovant's pleadings, we "must accept all facts and inferences in the pleadings as true in the light most favorable to" the nonmovant. *Postive Feed, Inc. v. Guthmann*, 4 S.W.3d 879, 882 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

In support of its holding that Chang, Johnson, Burnett, and JBC enjoy qualified immunity, the majority relies upon, "as law of the case," *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01–06–00696–CV, 2008 WL 746548 (Tex.App.-Houston [1st Dist.] Mar. 20, 2008, pet. denied). In *Greenberg*, this Court reasoned:

Construing the pleadings and summary judgment evidence liberally in favor of appellants, the acts alleged by appellants constitute conduct undertaken by attorneys to assist a client in securing and recovering an arbitration award. *Such conduct is the kind of conduct in which an attorney engages in discharging his duties to his client. Labeling the conduct as fraudulent does not automatically make it actionable and the attorneys liable for tort damages.* We conclude that Greenberg[,] Peden, Siegmyer, [R.F. Bearden Associates,] and Bearden were, as a matter of law, not liable for the conduct alleged in this case.

*Id.* at *11 (emphasis added). This Court held that the trial court did not err in granting summary judgment in favor of Greenberg, Peden, Siegmyer, R.F. Bearden Associates, and Bearden against Dixon, on its fraudulent misrepresentation claim, and against Hyperdynamics, on its negligent misrepresentation claim. *Id.*

It is true that, generally, Texas case law has discouraged lawsuits against an opposing counsel if the lawsuit is based on the fact that counsel represented an opposing party in a judicial proceeding. *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398 (Tex.App.-Houston [1st Dist.] 2005, no pet.). As we explained in *Alpert*,

An attorney has a duty to zealously represent his clients within the bounds of

---

1. Other defendants—Greenberg, Peden, Siegmyer & Oshman, P.C., Gerald Siegmyer, Ron Bearden, and R.F. Bearden Associates, Inc.—also filed summary judgment motions. *See Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01–06–00696–CV, 2008 WL 746548, at *6 (Tex.App.-Houston [1st Dist.] Mar. 20, 2008, pet. denied). Dixon had alleged that the Greenberg law firm, Siegmyer, Bearden, and R.F. Bearden Associates were jointly and severably liable for Chang's fraudulent misrepresentations based on theories of conspiracy, agency, and concert of action. *See id.* at *5. The Greenberg law firm and Siegmyer contended in their summary judgment motion that Dixon had no cause of action against them, as a matter of law, for conduct undertaken by Chang in the representation of a client. *Id.* at *6. Bearden and R.F. Bearden Associates contended that they could not be liable for the conduct of their attorneys. *Id.* The trial court granted the defendants' motions for summary judgment. *Id.*

the law. . . . In fulfilling this duty, an attorney has the right to interpose defenses and pursue legal rights that he deems necessary and proper, without being subject to liability or damages. . . . If an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest. . . . Thus, to promote zealous representation, courts have held that an attorney is "qualifiedly immune" from civil liability, with respect to non-clients, for actions taken in connection with representing a client in litigation.

*Id.* at 405 (citations omitted).

In determining whether an attorney enjoys such immunity, the focus is on the "type of conduct" engaged in by the attorney. *Id.* at 406. For example, if a lawyer participates in independently fraudulent activities, his action is "foreign to the duties of an attorney." *Id.* at 406. Thus, a lawyer "cannot shield his own willful and premeditated fraudulent actions from liability *simply on the ground that he is an agent of his client.*" *Id.* (emphasis added). Moreover, even when acting in a representative capacity, attorneys are not immune from liability when they engage in conduct that a non-attorney could have performed. *See Miller v. Stonehenge/FASA–Tex., JDC, L.P.*, 993 F.Supp. 461, 464–65 (N.D.Tex.1998) (discussing development of qualified immunity for attorneys in Texas courts and synthesizing various holdings).

In *Greenberg*, this Court erred in holding that the attorney defendants, "based on qualified immunity," could not be held liable, as a matter of law, for fraudulently misrepresenting to Fidelity that Erin Oil, pursuant to an arbitration award, had ownership rights to shares of Hyperdynamics stock which were, in fact, wholly owned by Dixon. Here, likewise, the majority so errs. Taking the pleadings of Dixon and Hyperdynamics as true, as we must, Chang knowingly misrepresented to Fidelity that Erin Oil had an ownership interest in shares of stock which were wholly owned by Dixon. In making the misrepresentation to Fidelity, Chang was not engaged in an adversarial relationship with Fidelity. As alleged, his fraudulent action, "foreign to the duties of an attorney," is not subject to qualified immunity.

Under Texas law, an attorney may be liable to a non-client for making a false statement of material fact to a known person who justifiably relies on the false statement, even if the attorney's purpose is to advance his client's interests. *McCamish*, 991 S.W.2d at 794–95. In *McCamish*, the McCamish law firm represented Victoria Savings Association ("VSA"). *Id.* at 788. VSA was attempting to reach a settlement agreement with Boca Chica Development Company, but the managing partner of Boca Chica refused to sign the settlement agreement unless the law firm affirmed that the settlement agreement had "been approved by the Board of Directors of [VSA]. . . ." *Id.* Ralph Lopez, a McCamish attorney, assured Boca Chica's managing partner that the VSA Board of Directors had approved the settlement agreement. *Id.* In fact, VSA's Board of Directors had not approved the agreement. *Id.* As a result of Lopez's misrepresentation, Boca Chica did not receive the benefit of the settlement agreement and sued McCamish for negligent misrepresentation. *Id.* at 789–90. Similarly, here, Chang's misrepresentation prevented Dixon from selling its stock, causing Dixon to realize a loss of over $3 million.

## Conclusion

This Court's erroneous holding in *Greenberg* and the panel's similarly erro-

neous holding in the instant case are contrary to the Texas Supreme Court's reasoning and ultimate holding in *McCamish.* Accordingly, I would overrule *Greenberg,* sustain the first issue of Dixon, and hold that the trial court erred in granting summary judgment in favor of Chang, Johnson, Burnett, and JBC on Dixon's claims. I would, in regard to the claims of Dixon against Chang, Johnson, Burnett, and JBC, reverse the judgment of the trial court and remand for further proceedings.