Opinion issued February 25, 2011

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-07-00431-CV

———————————

Brookshire Katy Drainage District, Appellant

V.

The Lily Gardens, LLC, Richard E. Flueckiger and
Kenneth B. Luedecke, Appellees



 



 

On Appeal from the 9th District Court 

Waller County, Texas



Trial Court Case No. 06-08-18415

 



 

 

CONCURRING OPINION ON DENIAL OF EN BANC CONSIDERATION

This case is about a picturesque cover placed over an
existing bridge on private land.  Long
ago, appellant, Brookshire Katy Drainage District (“the District”), constructed
a drainage canal across the land pursuant to an express easement with prior
landowners.  Around that time, the
District built the bridge across the canal. 
Appellees, Lily Gardens, LLC, Richard E. Flueckiger, and Kenneth B.
Leudeck (“the Landowners”), who operate an outdoor-venue business on the land,
placed the cover on the bridge in the belief that it enhances their business.  The District brought this action to compel
the Landowners to remove the cover from the bridge.  The district court and a panel of this Court
have both ruled in favor of the Landowners, determining that the cover may
remain.

The History of the
Bridge and Cover

In 1962, the District obtained an easement for a drainage
ditch approximately 10 feet deep that runs across the entire width of the
property.  The ditch divides the front
portion from the back part of the property. 
To allow ingress and egress from the back portion of the property that
is otherwise inaccessible due to the ditch, the District built the bridge over
30 years ago.  The bridge has never
affected drainage in any way.  In 2004,
the Landowners purchased this property with the intention of beautifying it for
use as a facility to host weddings.  To
beautify the bridge, the Landowners constructed a cover that is 24 feet long
and 20 feet wide.  The cover consists of
a triangular-shaped roof and two sides, which conceal the unattractive steel guardrails
that support the bridge.  A large vehicle
can travel over the bridge and under the cover without any impediment such as
walls or doors.  The lowest portion of
the bridge cover is approximately 10 feet above the ground, and no portion extends
below the bridge.  

In October 2006, a voluminous amount of rain besieged the
land in one of the wettest months in recorded history, but the waters flowed
unimpeded by the bridge cover.  The prior
owner of the land said that in the past 25 years, he never saw the level of the
water rise above the banks of the ditch, even during Tropical Storm
Allison.  The Landowners’ engineer expert
opined that the bridge cover would have “no real effect” on the drainage
waters.

The Terms of the
Private Easement

This lawsuit is not about easements granted to public
utilities in general because this easement was the product of a private
contract between the District and prior landowners.  Rather, this lawsuit is about a particular
bridge cover and whether it violates the particular contractual and legal
rights of an easement holder, the District. 
Under the parties’ contract, the District has the right to “abate other
obstruction, upon said canal right of way, that may injure, endanger, or
interfere with the construction, operation, maintenance and repair of said
drainage canal.”  Under the law, the
District has the right to reasonable use and enjoyment of its easement right,
and the Landowners must not engage in any activity that interferes with that right.  See Still v. Eastman Chem. Co., 170
S.W.3d 851, 854 (Tex. App.—Texarkana 2005, no pet.) (citing Harris County v.
S. Pac. Transp. Co., 457 S.W.2d 336, 340 (Tex. Civ. App.—Houston [1st
Dist.] 1970, no writ)).  

The Landowners do not deny that the contract prohibits them
from activities that may interfere with the District’s use of the drainage
canal, nor that the law prohibits them from interfering with the District’s use
and enjoyment of its easement rights. 
What the Landowners dispute is whether the bridge cover in issue
actually may or does interfere with these rights.  Because the District put forth no evidence of
such interference or the potential for such interference, we affirmed the trial
court’s judgment in favor of the Landowners.   
 

Although it concedes that the cover does not currently
interfere with its reasonable use and enjoyment of the easement, the District asserts
that in the future, the cover might create a drainage problem or might make it
difficult to remove the culverts, which are metal pipes inside the canal,
because the bridge cover might interfere with access.  The District, however, presented no evidence
showing how the cover—as compared to the bridge—might interfere in any way with
the District’s ability to construct, operate, maintain, or repair the drainage
canal.  The cover simply made what was
already there prettier.  

The examples given in the amicus briefs concerning how the
cover might interfere with the easement in the future illustrate the
evidentiary failure that occurred here. 
One amici contends that the cover might prevent a backhoe from moving
onto the bridge and reaching down into the culverts to remove debris.  It also states that equipment might need to
be located on the bridge in order to replace existing culverts.  However, the District presented no evidence
of this.  Had an expert provided an affidavit
averring to the reasonable possibility that these things might occur, the trial
court and the panel of this Court likely would have ruled in its favor.  Instead, the evidence shows the cover is
above ground level and has never affected the drainage canal in any way despite
heavy rain.  No mention of the possible
need for heavy equipment is in evidence. 
Although the use of the word “may” in the contract indicates a low
standard, proof is still required.  Even
had the District established that this easement is forward looking due to the
use of the word “may,” the evidence would remain deficient to show how the
cover might reasonably affect the easement in the future.  

Furthermore, the parties could have negotiated a contract that
precluded construction of any structure on or near the easement.  Cf. Pan
Am. Gas Co. v. Lobit, 450 S.W.2d 877, 880 (Tex. Civ. App.—Houston [1st
Dist.] 1969, writ ref’d n.r.e.) (pipeline easement provided that subservient
estate owner could not build or construct any obstruction, building or other
structure over or on right-of-way); Okan
Pipeline Co. v. Eiland, 394
S.W.2d 548, 550 (Tex. Civ. App.—Eastland 1965, writ ref’d n.r.e.) (gasoline
easement prohibited constructing “any obstruction, building, engineering works,
or other structure over said pipe line”). 
This particular contract does not absolutely disallow structures;
rather, the plain language of the contract implicitly allows structures as long
as they may not interfere with the canal. 


No-Evidence Review

In her dissent from denial of en banc review, Justice Keyes
objects to the application of the no-evidence standard, rather than the
traditional summary judgment standard, in review of this appeal.  It is well-established in this Court that,
when a party moves for both traditional and no-evidence summary judgment, we
first review the trial court’s summary judgment under the no-evidence standard
of Texas Rule of Civil Procedure 166a(i).[1]  Justice Keyes recognizes this practice, but
argues that the practice is problematic in instances where the issue is a “pure
question of law.”  Without commenting on
the merits of Justice Keyes’s analysis, I respectfully disagree that the case
at bar presents “purely legal issues.” 
As demonstrated above, this case necessarily depends on a determination
of whether the bridge cover in issue hinders or may hinder the District’s use
of its easement.   This is necessarily a
fact-specific inquiry subject to the presentation of evidence by the parties.  

In fact, while the original opinion in this case, which
Justice Keyes endorses, ostensibly applied a traditional summary judgment
standard, it too looked to the District’s evidence to determine the issue of
whether the bridge cover may impede the District’s use of the easement.  The pivotal distinction between the opinion
issued on rehearing and the original opinion is not found in interpretation of
the contract or easement law, but in the determination of whether the testimony
in Raymond Dollins’s affidavit constitutes competent evidence that the bridge
cover may interfere with the District’s maintenance and operation of the
drainage system.

Finally, Justice Keyes asserts that “[t]he problem with
granting a no-evidence summary judgment on a purely legal issue is, as the
court in the Cone case acknowledged,
that, even if a motion for summary judgment is presented as a no-evidence
motion, the law must be construed before it can be determined what the elements
of the applicable law are as to which the non-movant must produce proof.”   I
respectfully disagree that this approach is problematic in this case, nor do I
read Cone as identifying a “problem”
rather than merely observing common practice. 
See Cone v. Fagadau Energy Corp.,
68 S.W.3d 147, 156 n.4 (Tex. App.—Eastland 2001, pet. denied) (“the
court must determine the law which is applicable to the case with respect to
any no-evidence motion for summary judgment in order to determine if the
summary judgment evidence raises a genuine issue of material fact.  The fact that a dispute exists with respect to
the applicable law does not prevent the court from performing its function of
analyzing the non-movant’s evidence to determine if it raises a fact issue.”). 
Courts are routinely, if not always, put to the task of determining
legal issues in deciding no-evidence motions for summary judgment.  To decide whether a plaintiff has put forth
evidence of the elements of a tort, the court must necessarily determine what
those elements are.  Granting summary
judgment on the basis of a failure to present evidence of an element that the
law does not impose is error.  See,
e.g., Moreno v. Quintana, 324 S.W.3d 124, 136-37 (Tex.
App.—El Paso 2010, pet. denied) (reversing no-evidence summary judgment where
movant alleged no evidence of malice but malice was not element of non-movant’s
claim); Villarreal v. Wells Fargo Brokerage Services, LLC, 315 S.W.3d
109, 127 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (reversing no-evidence
summary judgment where only element identified by movants as entitling them to
summary judgment was not element of claim on which summary judgment was
granted); Baker v. City of Robinson, 305 S.W.3d 783, 793 (Tex. App.—Waco
2009, pet. denied) (sustaining error with respect to traditional and
no-evidence summary judgment on statutory fraud claim on basis of absence of
intent to deceive because intent to deceive is element of common law fraud but
not statutory fraud claim pled).  The primary
distinction between traditional and no-evidence motions for summary judgment is
not whether the court must decide legal issues to rule on the motion—both
motions require the court to act as arbiter of the law—but, rather, whether the
legal issues in the case dictate the outcome without regard to any evidentiary
issue. 

The Consequences of This Decision

The terms of this private contract do not absolutely disallow
structures.  They limit only those
obstructions that may injure, endanger, or interfere with the construction,
operation, maintenance and repair of the drainage canal.  That some construction can coexist with a
free flowing drainage canal is evident from the District’s own bridge, which
sits above the easement without obstruction or interference.  This decision is case specific.  We examine the facts in light of the existing
bridge and the absence of any summary judgment evidence explaining how the
cover might affect the easement beyond any effect by the bridge.    

 This case does not
meet the en banc standard for review.  See Tex.
R. App. P. 41.2(c).  Nothing is
extraordinary about this case, there are no consequences beyond the particular
interpretation of this private contract, and this decision does not conflict
with any other.  See id.  Despite the dire
consequences predicted by government entities, this case comes down to one
government entity’s evidentiary failure in one case—nothing more.  This Court’s holding does not diminish the
rights of public entities to abate obstructions that the evidence demonstrates
in reasonable likelihood may impair or impede the use of the easement.  For these reasons, I concur in the denial of
en banc consideration and submit that the petition for review should be
denied.  See id.; Tex. R. App. P.
56.1(a).  

Conclusion

I concur with the denial of en banc
consideration.

                                                                   

 

Elsa Alcala

                                                                   Justice


 

A majority of the justices of the Court
voted to overrule the motion for en banc reconsideration.

En banc court consists of Justices
Jennings, Keyes, Alcala, Higley, Bland, Sharp, Massengale, Brown, and
Wilson.  Chief Justice Radack not participating.

Justice Alcala, concurring in the denial
of en banc reconsideration.

Justice Massengale, concurring in the
denial of en banc reconsideration.

Justice Jennings, dissenting from the
denial of en banc reconsideration, joined by Justice Keyes.

Justice Keyes, dissenting from the
denial of en banc reconsideration, joined by Justice Jennings.

Justice Wilson, dissenting from the
denial of en banc reconsideration.











[1] E.g., Aspenwood
Apartment Corp. v. Coinmach, Inc., No. 01-08-00636-CV, 2011 WL
478546, at *5 (Tex. App.—Houston [1st Dist.] Feb. 10, 2011, no. pet. h.)
(citing Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004)); Coburn
v. Toys “R” Us-Delaware, Inc., No. 01-09-00871-CV, 2011 WL 345936, at *2
(Tex. App.—Houston [1st Dist.] Feb. 3, 2011, no. pet. h.) (mem. op.); Bosch
v. Cedar Vill. Townhomes Homeowners Ass’n, Inc., No. 01-09-00654-CV, 2011
WL 346317, at *2 (Tex. App.—Houston [1st Dist.] Feb. 3, 2011, no. pet. h.)
(mem. op.); Samuel v. Wal-Mart Stores, Inc., No. 01-08-00702-CV, 2010 WL 2788879, at *2 (Tex. App.—Houston
[1st Dist.] July 15, 2010, pet. denied) (memo op.); Maurer v. 8539, Inc., No. 01-09-00709, 2010 WL 5395713 (Tex.
App.—Houston [1st Dist.] Dec. 30, 2010, no pet.) (mem. op.); Allen &
Martha Lewis Revocable Trust v. Perales, No. 01-09-00140-CV, 2010 WL 3212125,
at *5 (Tex. App.—Houston [1st Dist.] Aug. 12, 2010) (mem. op.) decision
clarified on denial of reh'g, No. 01-09-00140-CV, 2010 WL 4056513 (Tex.
App.—Houston [1st Dist.] Oct. 14, 2010, no pet.); Clark v. Wells Fargo Bank,
N.A., No. 01-08-00887-CV, 2010 WL 2306418, at *4 (Tex. App.—Houston [1st
Dist.] June 10, 2010, no pet.) (mem. op.); Blevins v. Andrews, No 01-08-00598-CV,
2010 WL 1611382, at *3 (Tex. App.—Houston [1st Dist.] Apr. 22, 2010, no pet.)
(mem. op.); Dixon Fin. Servs., Ltd. v. Chang, 325 S.W.3d 668, 676 n.5 (Tex.
App.—Houston [1st Dist.] 2010, pet. denied).