Olga (Chapa) VILLARREAL and
Isreal Chapa, Appellants,

v.

WELLS FARGO BROKERAGE SER-
VICES, LLC, Wells Fargo Invest-
ments, LLC, and Charles J. Lewis, Jr.,
Appellees.

No. 01–08–00258–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 11, 2010.

Leonard J. Meyer, Leslie K. Hillendahl, Zimmerman, Axelrad, Meyer, Stern & Wise, P.C., Houston, TX, for Appellants.

Lindsey Eubank Simmons, Joyce McFarland & McFarland LLP, Yasmin Islam Atasi, Winstead PC, Houston, TX, Michael L. Scanes, Scanes, Routh & James, LLP, Waco, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices ALCALA and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

In this appeal, plaintiffs/appellants, Olga (Chapa) Villarreal and Israel Chapa, present three issues challenging the trial court's order granting summary judgment in favor of defendants/appellees, Wells Fargo Brokerage Services, LLC, Wells Fargo Investments, LLC (collectively, "Wells Fargo"), and Charles J. Lewis, Jr.

We affirm in part and reverse in part.

### Factual & Procedural Background

Pete David Chapa ("Mr. Chapa") developed silicosis after working at a glass plant for 20 years. Mr. Chapa filed suit based on his silicosis injuries and obtained a settlement for $650,000. The settlement funded shortly after his death in February 1997. As directed by Mr. Chapa, the settlement funds were placed in a testamentary trust for the benefit of his two adult children, Olga (Chapa) Villarreal and Israel Chapa (collectively, "the Chapas"). Mr. Chapa named a family friend, Ramiro Pena, Jr. ("Pena"), to act as trustee.

Pena opened a non-discretionary brokerage account with investment broker Charles J. Lewis, Jr. ("Lewis") at Wells Fargo. Pena deposited $634,000 into the account on May 19, 1997. In August 1997, Pena began margin trading with the account's funds. Pena signed a margin trading agreement with Wells Fargo. The agreement explained that margin trading allowed Pena to borrow money from Wells Fargo and that such loans were secured by the brokerage account's assets.

In late 1999 and early 2000, Pena authorized Wells Fargo to invest the account's funds in technology mutual funds. From December 31, 1999 to January 31, 2001, the value of the brokerage account went from $653,214.87 to $361,538.98.

Pena closed the brokerage account with Wells Fargo on November 1, 2001. Pena then invested the funds with Jubilee Investments.

On June 21, 2005, Israel Chapa's attorney sent a letter to Pena regarding the trust's assets. The letter indicated that the beneficiaries had never received an accounting of the trust's funds, but had received only "a few general comments about some money being lost in investments." The letter also stated that Israel had stopped receiving monthly payments from the trust and had been told by Pena that the money was "tied up" in Jubilee Investments. Israel's counsel demanded that Pena provide an accounting of the trust's assets since its creation. Pena provided information to the beneficiaries, but not until six months after receiving Israel's request.

The Chapas filed suit against Pena, Wells Fargo, and the principals of Jubilee Investments on August 17, 2006. The Chapas alleged that Pena breached his fiduciary duty as trustee by failing to properly invest, manage, and preserve the trust's assets. The Chapas also alleged that Pena breached his fiduciary duty by failing to "institute[ ] legal action" against Wells Fargo and by failing to fully disclose "material facts" to the Chapas regarding the losses sustained by the trust.

The Chapas also alleged that Wells Fargo owed a fiduciary duty to Pena in his capacity as trustee of the testamentary trust and, by extension, to them as beneficiaries of the trust. The Chapas asserted that Wells Fargo, through the acts of its employee, investment broker Charles Lewis, had breached that duty by advising Pena to make "unsuitable" high-risk investments with the trust's funds, despite Pena's request that the funds be placed in low-risk investments. Specifically, the Chapas identified the technology mutual

funds and the margin trading as "unsuitable" investments for the trust's assets. The Chapas claimed that, when Pena had questioned Lewis about the suitability of these investments, Lewis had continually assured him that they were suitable investments for the trust's funds.

Besides breach of fiduciary duty, the Chapas also sued Wells Fargo for breach of the duty of good faith and fair dealing, negligent misrepresentation, negligence, and violations of the Deceptive Trade Practices Act and the Texas Securities Act. In addition, the Chapas set forth a cause of action against Wells Fargo for assisting Pena in breaching his fiduciary duty to the Chapas.

In their petition, the Chapas further asserted that Wells Fargo was vicariously liable for Lewis's acts based on respondeat superior and based on a "negligent failure to supervise." The Chapas also alleged that the discovery rule and "fraudulent concealment" had served to toll the statute of limitations on their claims.

After the Chapas filed their third amended petition, Pena filed a motion to designate Lewis as a "responsible third party" pursuant to Civil Practices and Remedies Code section 33.004. The Chapas also filed a motion to join Lewis as a defendant based on section 33.004(e). After the trial court granted the motion to join, the Chapas filed their fourth amended petition, adding Lewis as a defendant. The Chapas asserted the same causes action against Lewis as they had previously asserted against Wells Fargo. The Chapas also added a cause of action for fraud against Wells Fargo and Lewis.

Wells Fargo and Lewis filed a "traditional" rule 166a(c) motion for summary judgment against the Chapas. The summary judgment movants asserted, "as a threshold matter," that they did not owe an independent fiduciary duty to the Chapas because Pena was the account holder, not the Chapas.

Wells Fargo and Lewis asserted the affirmative defense of limitations as the primary basis for summary judgment. They argued that the applicable statutes of limitation had expired on all of the Chapas' causes of action. Wells Fargo and Lewis contended that the discovery rule and fraudulent concealment did not operate to toll the various limitations periods.

The summary judgment movants asserted that, because the Chapas' alleged injuries were not "inherently undiscoverable," the discovery rule did not apply to toll the statutes of limitation. Wells Fargo and Lewis acknowledged Pena's deposition testimony in which he testified that he was unaware that investing in technology mutual funds or margin trading were not "suitable" investments for the trust's assets until he consulted an attorney in 2005 after receiving the Chapas' demand letter requesting an accounting for the trust. Wells Fargo and Lewis averred that Pena's claim was "misplaced." The movants asserted, "[A]ny injury or wrongdoing caused by Wells Fargo or Lewis was clearly evident on the face of the bank statements, which showed all activity in the margin account, the funds in which the account was invested, and gains and losses to the account."

To support this assertion, Wells Fargo and Lewis offered, as evidence, monthly and quarterly account statements received by Pena from December 1999 through January 2001. The statements show a noticeable decline in the brokerage account's funds. They also offered a document signed by Pena on December 4, 2000, which directed Wells Fargo to transfer funds from Internet and technology mutual funds into a "unit investment trust" that had "greater diversification and less over-

all volatility." The movants pointed to the monthly account statement following this transaction, which reflected that proceeds from this sale had been used to pay monies owed on the margin account balance.

With regard to fraudulent concealment, Wells Fargo and Lewis argued that nothing had been concealed from Pena. They again pointed to the monthly and quarterly statements received by Pena, which showed the decline in the brokerage account's value.

Wells Fargo and Lewis argued that "any claims Pena may have had against Wells Fargo or Lewis accrued in 2000 when Pena received the monthly statements and quarterly reports reflecting the losses in technology funds, and certainly no later than December 4, 2000, when Pena decided to move the brokerage account investments out of the technology funds into more conservative investments, as a result of the losses." Wells Fargo and Lewis concluded that the Chapas' claims first asserted in their August 17, 2006 lawsuit were "barred by the statutes of limitations, as the longest period for any cause of action they allege is four years."

The Chapas responded to the motion for summary judgment by first clarifying that they, as the trust's beneficiaries, had the legal right to pursue claims on behalf of the trust which the trustee, Pena, had not pursued. The Chapas also reminded Wells Fargo and Lewis that they had asserted a claim against both defendants for assisting Pena in breaching his fiduciary duty as trustee to the Chapas.

The Chapas reasserted their claim that the discovery rule tolled the running of limitations. They argued that "a fiduciary's misconduct is inherently undiscoverable." The Chapas again pointed out that Pena, as trustee, owed them a fiduciary duty. They asserted, "Pena actively concealed from them the fact and extent of the injury they suffered through the misfeasance of Lewis." They continued, "Plaintiffs have established that they did not learn of their injury until December 2005 when [Pena] finally provided an accounting to the Plaintiffs."

In their summary judgment response, the Chapas also reasserted their claim that "the various statutes of limitations are tolled due to fraudulent concealment." They asserted that they had "produced evidence of a breach of trust/breach of fiduciary duty by Lewis, Wells Fargo, and [Pena] in picking out investments for the trust that were prima facie unsuitable." The Chapas argued that the defendants "knew of the tort, but used deception to conceal the tort." They further asserted that "a fiduciary has an affirmative duty to disclose material facts to the beneficiaries and a breach of the duty to disclose is tantamount to concealment." The Chapas averred that Pena had "failed to provide periodic statements regarding the trusts to Plaintiffs and did not disclose the losses occasioned by Lewis's negligence until long after they occurred." They asserted that they had "relied on Lewis's and Pena's deception to their detriment." For these reasons, the Chapas concluded, "[T]he applicable statute of limitations for the various causes of action were tolled during the time that the losses were fraudulently concealed."

In their motion for summary judgment, Wells Fargo and Lewis also argued that Lewis could not properly be joined pursuant to Civil Practice and Remedies Code section 33.004. The movants acknowledged that section 33.004 provides that a claimant (plaintiff) is not barred by limitations from seeking to join a responsible third party within 60 days after that person is designated as a responsible third party.

Wells Fargo and Lewis argued that the Chapas should not be permitted to join Lewis because such joinder was a "fraudulent" attempt to avoid limitations. They alleged that the Chapas and Pena had conspired to circumvent limitations.

Wells Fargo and Lewis also argued that allowing joinder of a defendant against whom limitations had run before the lawsuit was initially filed would be an "absurd result" and a "nonsensical" interpretation of the statute.

The movants also asserted that section 33.004 did not apply to those causes of action asserted by the Chapas for which limitations had expired prior to the section's effective date. Wells Fargo and Lewis further asserted that section 33.004 did not apply to certain statutory claims asserted by the Chapas.

The Chapas responded that the plain language of section 33.004(e) permitted their joinder of Lewis and appeared to "contemplate[ ] the very issue of bringing in a person who limitations may have run against." The Chapas further asserted that Wells Fargo was "liable under the doctrine of respondeat superior to the extent that [Lewis] is found liable."

Wells Fargo and Lewis filed a reply to the Chapas' summary judgment response. In addition to reasserting their initial summary judgment arguments, the summary judgment movants pointed out that, in their response, the Chapas "do not dispute that they stand in the shoes of Pena, the trustee, for purposes of their claims." Wells Fargo and Lewis agreed that the Chapas could assert claims based on their status as beneficiaries of the testamentary trust. But, they disagreed that the Chapas had "individual claims against Wells Fargo and Lewis." They asserted, "Plaintiff's stand in the trustee's shoes, and Plaintiffs' limitations period is computed from the time the trustee acquired his right to sue."

In their reply, Wells Fargo and Lewis also asserted, "[s]ection 33.004 was clearly not intended to allow for the collusive joinder of an employee of a previously-named defendant where, as here, the claims against the employee and employer are one and the same, and the employee was known to the parties all along, and Plaintiffs made a conscious decision not to sue the employee at the outset." They further alleged that, even assuming that Lewis was properly joined, section 33.004 does not operate to "revive" time-barred claims against Wells Fargo "by virtue of respondeat superior."

In addition to their traditional motion for summary judgment, Wells Fargo and Lewis also asserted a no-evidence motion for summary judgment with respect to one of the Chapas' causes of action: the Chapas' claim that Wells Fargo and Lewis had participated or assisted in Pena's breach of his fiduciary duty as trustee to the Chapas. Specifically, Wells Fargo and Lewis asserted that the Chapas could produce no evidence that Wells Fargo's and Lewis's conduct breached a duty to the Chapas.

The trial court granted Wells Fargo's and Lewis's motion for summary judgment. In its order, the trial court specified that "all claims asserted by Plaintiffs [the Chapas] against Wells Fargo and Lewis are barred by the statutes of limitations." The trial court ordered that all of the Chapas' claims against Wells Fargo and Lewis "are hereby dismissed with prejudice, and Plaintiffs shall take nothing by reason of those claims." The trial court then granted the movants' motion to sever, making the summary judgment order final for purposes of appeal.

The Chapas appealed. They present three issues challenging the summary judgment order. In their first two issues,

the Chapas contend that summary judgment was not proper based on limitations. In their third issue, the Chapas assert that summary judgment could not be based on the ground that there was no evidence to support their claim that Wells Fargo and Lewis participated or assisted Pena in breaching his fiduciary duty.

## Summary Judgment Based on Limitations

In their first and second issues, the Chapas contend that the trial court erred by granting summary judgment because Wells Fargo and Lewis failed to prove, as a matter of law, that limitations bar the Chapas' claims, which they assert as trust beneficiaries on behalf of the trustee. On appeal, the Chapas contend that a genuine issue of material fact exists regarding whether the discovery rule deferred the accrual of these causes of action.[1]

### A. Legal Principles: Traditional Summary Judgment and Limitations

Because summary judgment is a question of law, a trial court's summary judgment decision is reviewed de novo. *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). In our review, we take the nonmovant's competent evidence as true, indulge every reasonable inference in favor of the nonmovant, and resolve all doubts in favor of the nonmovant. *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex.2005). To prevail on a "traditional" summary-judgment motion asserted under Rule 166a(c), a movant must prove that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Little v.*

*Texas Dep't of Criminal Justice,* 148 S.W.3d 374, 381 (Tex.2004).

A defendant moving for summary judgment on the affirmative defense of limitations must conclusively establish the date on which the limitations commenced; that is, the date on which the cause of action accrued. *See Pustejovsky v. Rapid–American Corp.,* 35 S.W.3d 643, 646 (Tex.2000); *Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975). The determination of this date is typically a question of law. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 221 (Tex.2003).

As a general rule, a cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a party to seek a judicial remedy. *Id.* (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 514 (Tex.1998)). In most cases, claims accrue "when a wrongful act causes some legal injury." *Via Net v. TIG Ins. Co.,* 211 S.W.3d 310, 313 (Tex. 2006). This is true even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *Knott,* 128 S.W.3d at 221 (citing *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996)).

The discovery rule defers the accrual of a cause of action until the plaintiff knows, or by exercising reasonable diligence, should know of the facts giving rise to the claim. *Barker v. Eckman,* 213 S.W.3d 306, 311–12 (Tex.2006). For the discovery rule to apply, the injury must be inherently undiscoverable and objectively verifiable. *Id.* at 312; *Via Net,* 211 S.W.3d at 313.

---

1. In the trial court, the Chapas asserted that fraudulent concealment also served to toll the running of limitations. On appeal, the Cha-

pas do not separately brief fraudulent concealment, but incorporate certain aspects of it into their discovery-rule argument.

If the plaintiff pleads the discovery rule as an exception to limitations, the moving defendant then has the dual burden of proving the date of accrual and of negating the discovery-rule exception. *See Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 622 (Tex.App.-Houston [14th Dist.] 2009, pet. denied). The defendant may negate the exception by proving, as a matter of law, that no genuine issue of material fact exists regarding when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the wrongful act and resulting injury. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *see also Childs v. Haussecker*, 974 S.W.2d 31, 37 (Tex.1998). If the movant establishes that limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue to avoid limitations. *KPMG Peat Marwick*, 988 S.W.2d at 748.

### B. Analysis of Whether Limitations had Expired

In *Interfirst Bank–Houston, N.A. v. Quintana Petroleum Corporation*, we explained,

> It is only when the trustee cannot or will not enforce the cause of action that he has against the third person that the beneficiary is allowed to enforce it. In such a case, the beneficiary is not acting on a cause of action vested in him, but is acting for the trustee, and the period of the statute of limitations should be computed from the time the trustee acquired his right to sue.

699 S.W.2d 864, 874 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.).

In this case, the Chapas asserted their claims against Wells Fargo and Lewis for breach of fiduciary duty, breach of the duty of good faith and fair dealing, negligent misrepresentation, negligence, fraud, and for statutory violations, as trust beneficiaries on behalf of the trustee. *See id.* The parties agree that the limitations periods for these claims began to run when Pena, as trustee, acquired his right to sue. *See id.* As a result, Wells Fargo and Lewis had to show that no genuine issue of material fact exists regarding when Pena, not the Chapas, discovered, or in the exercise of reasonable diligence should have discovered, the wrongful act and resulting injury.[2] *See id.* Indeed, all of the arguments and evidence offered by Wells Fargo and Lewis related to Pena's knowledge, not the Chapas' knowledge.

The Chapas allege that Lewis owed a fiduciary duty to Pena to correctly advise him regarding suitable investments for the testamentary trust funds. The Chapas allege that Lewis breached this duty when he directed Pena to engage in margin trading and invest in high-risk technology mutual funds.

**2.** In contrast, the Chapas prosecute the claim against Wells Fargo and Lewis for assisting or participating in Pena's breach of his fiduciary duty in individual capacities, not on behalf of the trustee. We agree with the Chapas that the limitations period for this claim began when *the Chapas* knew or should have known of facts that, in the exercise of reasonable diligence, would have led to the discovery of Pena's alleged breach of his fiduciary duty. *See Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997); *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 394 (1945). Wells Fargo and Lewis offered no summary judgment argument or proof to show when *the Chapas* knew or should have known of facts that, in the exercise of reasonable diligence, would have led to discovery of Pena's alleged breach of his fiduciary to them. Thus, summary judgment was not proper on this claim based on limitations. As mentioned, Wells Fargo and Lewis asserted a no-evidence motion for summary judgment regarding this cause of action. We discuss the propriety of the no-evidence motion for summary judgment with respect to this claim *infra*.

■ The Chapas correctly point out that when analyzing the applicability of the discovery rule in cases in which the alleged injuries arise from a breach of fiduciary duty, the claims are generally considered inherently undiscoverable. *See S.V.,* 933 S.W.2d at 8; *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex. 1996). Nonetheless, once the fiduciary's misconduct becomes apparent, the claimant cannot ignore it, regardless of the fiduciary nature of the relationship. *See S.V.,* 933 S.W.2d at 8; *see also Computer Assocs.,* 918 S.W.2d at 456. In other words, such claims accrue when the claimant knows or in the exercise of ordinary diligence should know of the wrongful act and resulting injury.[3] *See Murphy v. Campbell,* 964 S.W.2d 265, 271 (Tex.1997). The date that a claimant knew or should have known of an injury is generally a fact question. *See Childs,* 974 S.W.2d at 44. However, if reasonable minds could not differ about the conclusion to be drawn from the facts in the record, the start of the limitations period may be determined as a matter of law. *See id.*

■ Here, Wells Fargo and Lewis offered evidence to show that, on December 4, 2000, Pena knew, or should have known, the risky and "unsuitable" nature of the subject investments and of the injury to the trust. To support summary judgment, the movants offered the monthly and quarterly statements received by Pena from December 1999 through January 2001. The statements show that from December 31, 1999 to November 30, 2000 the value of the brokerage account declined from $653,214.87 to $433,202.86. In the month of November 2000, the account lost $152,886.26. The statement dated December 29, 2000 indicates that account funds were used to pay for losses sustained due to margin trading.

The movants offered Pena's deposition testimony in which Pena admitted that he was aware that the losses to the brokerage account resulted from the investments in the technology mutual funds. Pena acknowledged that he decided to take the brokerage account's funds out of the technology sector investments in December 2000 because he knew that the account had sustained losses from the technology investments.

The movants also offered the "Client Investment Replacement Authorization" form signed by Pena on December 4, 2000. In the form, Pena directed that the brokerage account's funds "exit" from the technology mutual funds and be invested in a "unit investment trust." The handwritten notation on the form indicates that the "reason for [the] change" was as follows: "Diversify from internet sector/technology funds into UIT with greater diversification and less overall volatility."

By the hand-written notation, the Client Investment Replacement Authorization form indicates that Pena was aware that the technology investments were, as the Chapas allege, not "suitable" investments for the trust fund's assets because of their volatility. Pena was also aware that the trust's corpus had sustained substantial losses caused by investment in the technology mutual funds. And he was aware that margin trading was also depleting the trust fund's assets.

Pena's awareness of these facts, at a minimum, would have caused a reasonably prudent trustee to further inquire into Lewis's conduct. Even assuming a fiduciary relationship between Pena and Lewis,

---

3. The same rule applies by statute in DTPA claims. *See* Tex. Bus. & Com.Code Ann. § 17.565 (Vernon 2002).

Pena could not simply sit back and ignore the very facts that the Chapas now, acting on his behalf, claim afford them a judicial remedy.

Based on the summary judgment proof offered, Wells Fargo and Lewis conclusively established that Pena knew, or should have known of Lewis's alleged wrongdoing, and of the resulting injury, on December 4, 2000. *See Murphy,* 964 S.W.2d at 271; *S.V.,* 933 S.W.2d at 8; *Computer Assocs.,* 918 S.W.2d at 456; *see also Freuden v. Hibernia Nat. Bank,* No. 09–08–00398–CV, 2009 WL 2045158, at *3 (Tex.App.-Beaumont July 16, 2009, pet. denied) (mem.op.). This is true even when the evidence is viewed in favor of the Chapas. Thus, Wells Fargo and Lewis conclusively proved that the Chapas' causes of action brought on behalf of Pena accrued on December 4, 2000.

On appeal, the Chapas point to record evidence to show that, when viewed in the light most favorable to them, a genuine issue of material fact exists regarding when their causes of action accrued. The Chapas rely on Pena's testimony that he did not realize that the trust's funds had not been suitably invested until December 2005, when Pena consulted an attorney to respond to the Chapas' demand for an accounting of the trust.

The Chapas also point to evidence that Pena was inexperienced as a trustee and as an investor. Pena testified that he told Lewis that he did not want to place the trust's funds in any risky investments. He stated that Lewis had assured him that the funds would be not be put at risk. Pena testified that, when he questioned Lewis regarding the losses in the account, Lewis reassured him that the investments were suitable. In their brief, the Chapas point to testimony that Lewis had "crafted the investment strategy specific for the Trust to achieve 'preservation' of the principal for the benefit of the Chapas as beneficiaries, all the while knowing that Pena was relying on his expert advice as a 'certified financial planner.'" The Chapas also cite testimony that, on one occasion, "Lewis made the decision to sell stock out of the Trust account to reduce the amount of margin without seeking the approval of Pena or even notifying him of such sale until after the fact."

Here, the monthly account statements, coupled with the Client Investment Replacement Authorization, shows that, on December 4, 2000, Pena had an affirmative awareness of the losses sustained by the trust's assets and of the cause of that loss. When viewed in their favor, the evidence cited by the Chapas may raise a fact issue regarding whether Pena knew, or should have known, of the alleged unsuitable nature of the investments *before* December 4, 2000, given the claimed fiduciary relationship between Lewis and Pena. The evidence cited by the Chapas may also be relevant to the underlying merits of their claims. But, such evidence does not raise a genuine issue of material fact regarding whether Pena knew, or should have known, of Lewis's alleged wrongdoing and of the resulting injury on December 4, 2000.

Viewing the evidence in the light most favorable to the Chapas, Wells Fargo and Lewis established that Pena knew, or should have known, of Lewis's alleged wrongdoing and of the resulting injury on December 4, 2000. *See Murphy,* 964 S.W.2d at 271; *S.V.,* 933 S.W.2d at 8; *Computer Assocs.,* 918 S.W.2d at 456. Accordingly, Wells Fargo and Lewis conclusively proved that the Chapas' causes of action brought on behalf of Pena accrued on December 4, 2000.

It is undisputed that the Chapas' causes of action have statutes of limitations ranging from two years to four years. The

Chapas did not file suit until August 17, 2006. Therefore, we conclude that the Chapas' claims against Wells Fargo and Lewis, asserted by them on behalf of Pena, for breach of fiduciary duty, breach of the duty of good faith and fair dealing, negligent misrepresentation, negligence, fraud, and violating the Deceptive Trade Practices Act and the Texas Securities Act were barred by limitations when the suit was filed.

## C. Civil Practices and Remedies Code Section 33.004

██ In support of their first two issues challenging summary judgment, the Chapas also contend that Civil Practices and Remedies Code section 33.004 permits them to pursue their claims against Lewis and Wells Fargo, regardless of whether those claims were time-barred at the time suit was initially filed. Section 33.004 is part of Chapter 33, the statutory scheme for the apportionment of responsibility in tort and deceptive trade practices actions. *See* TEX. CIV. PRAC. REM.CODE ANN. §§ 33.001–.017 (Vernon 2008).

Section 33.004 provides, in relevant part,

(a) A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party. The motion must be filed on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date.

. . . .

(e) If a person is designated under this section as a responsible third party, a claimant is not barred by limitations from seeking to join that person, even though such joinder would otherwise be barred by limitations, if the claimant seeks to join that person not later than 60 days after that person is designated as a responsible third party.

TEX. CIV. PRAC. REM.CODE ANN. § 33.004(a),(e) (Vernon 2008).

It is undisputed that, pursuant to section 33.004(e), the Chapas joined Lewis within 60 days after he had been designated as a responsible third party by Pena. In their motion for summary judgment, Wells Fargo and Lewis raised several grounds to support their assertion that section 33.004(e) did not permit Lewis's joinder.

### 1. Public Policy

The movants first characterize Lewis's joinder as "fraudulent." They alleged that the Chapas and Pena colluded to join Lewis after the Chapas realized that their claims against Wells Fargo were time-barred. The movants argued that section 33.004(e)'s joinder provision should not apply when, as here, a plaintiff's claims were time-barred *before* suit was filed. Specifically, the movants asserted,

[I]nterpreted logically, the apparent limitations savings clause [of section 33.004(e) ] should only operate to revive claims against later joined responsible third parties in cases where the initial lawsuit was timely filed. Any suggestion to the contrary, namely that limitations may be revived as to claims which were barred on the date the lawsuit was first filed, would essentially strip all defendants who are joined as responsible third parties from any limitations defense, regardless of how far back the conduct in question occurred. Taken to its end, this argument would lead to absurd results and potential for collusion that the legislature could not have possibly intended when they drafted § 33.004(e).

The movants acknowledged that no case law supports their policy argument and that "the legislative history does not shed any light on the limitations issue."

Although the movants' policy argument has certain common sense appeal, it cannot serve to defeat the plain language of the statute, which permitted the joinder of Lewis in this case. Last year, the San Antonio Court of Appeals rejected a similar public policy argument in *Flack v. Hanke*, —— S.W.3d ——, —— (Tex.App.-San Antonio 2009, no pet.). There, the designating defendant had agreed to designate the appellees as responsible third parties in exchange for being dismissed from the suit as part of a settlement agreement with the plaintiff. *See id.* at ——. The appellees argued that their designation as responsible third parties should be disallowed because such designation was an "attempt to manipulate the process" and to circumvent their statutory limitations defense. *Id.* at ——. The court of appeals acknowledged that the appellees were likely designated as responsible third parties solely to "wash out" the appellees' limitations defense.[4] *Id.* at ——. Nonetheless, the San Antonio court of appeals rejected the appellees' policy argument, explaining, "[T]he statute does not specifically preclude such designations based on the intent of the designor." *Id.*

■ We must construe section 33.004(e) according to its plain language and may not add language that is not implicitly contained in the language of the statute. *See Lee v. City of Houston*, 807 S.W.2d 290, 295 (Tex.1991). Here, we can ascertain no legislative intent from the statutory scheme that the legislature meant to preclude the joinder of a responsible third party, which had a valid limitations defense when the suit was filed. *See* TEX. CIV. PRAC. REM.CODE ANN. § 33.004(e); *see also* TEX. CIV. PRAC. REM.CODE ANN. § 33.002 (defining applicability of Chapter 33, including listing types of claims to which chapter does not apply). Rather, the provision's plain language expressly allows, for a limited period, the revival of claims that were previously time-barred. *See* TEX. CIV. PRAC. REM.CODE ANN. § 33.004(e).

■ We further note that our function is not to question the wisdom of the statute or measure it for logic; we are to apply the statute as written, unless the context or an absurd result requires a different construction. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 629 (Tex. 2008); *Lee*, 807 S.W.2d at 293. Wells Fargo and Lewis argued in their summary judgment motion that allowing Lewis's joinder leads to such an absurd result. To illustrate their point, they offered the following example and argument:

> Plaintiff (P) files suit in January 2008 against D1, an individual driving alone, and D2, a moving company, for negligence stemming from a May 1997 three-car automobile accident. P's claims against D1 and D2 are clearly barred by the two-year negligence statute of limitations. D1, the individual, files a motion to designate T, the employee driver of D2's moving company vehicle, as a responsible third party. P then joins T as a defendant pursuant to 33.004(e), even though over 10 years have passed since the accident, and any claims against T are clearly time-barred. By the Chapa Plaintiffs' logic, the claims against T should survive pursuant to the savings clause of 33.004(e), even though the initial suit by P was not timely filed. Thus, P would be able to revive a completely dead case and pursue his 10–year–old claims against T. Clearly this is would be designated by Pena as a responsible third party.

---

4. We note that, unlike in *Flack*, there is no evidence in this case that Pena and the Chapas had any express agreement whereby Lew-

was not the intent of the legislature in drafting 33.004.

Again, Wells Fargo and Lewis provide a compelling argument. Nonetheless, the underlying facts of this case are unlike those in the movants' example. Here, no allegation or proof has been offered to show that the Chapas' claims against Pena, the defendant who designated Lewis as a responsible third party, were time-barred when suit was initially filed. To the contrary, it appears accepted by the parties that the Chapas' claims against Pena were timely. In contrast, the defendant, D1, in the movants' example, who designated T as a responsible third party, had a valid limitations defense when suit was filed.

The distinction does have significance. Here, the case is not "completely dead," as the movants characterized the claims in their example. The Chapas had a "live" claim against Pena when they filed suit. Under the statutory scheme of Chapter 33, Pena had the right to designate Lewis as a responsible third party to apportion responsibility. *See* TEX. CIV. PRAC. REM.CODE ANN. § 33.004(a).

The legislature has chosen to permit a defendant to designate a responsible third party, regardless of whether that party has a valid limitations defense. *See* TEX. CIV. PRAC. REM.CODE ANN. § 33.011(6) (Vernon 2008) (broadly defining "responsible third party"). In turn, the legislature balanced out the rights of a claimant, such as the Chapas, by giving the claimant a 60–day window to join a responsible third party, regardless of whether that party has a valid limitations defense. *See* TEX. CIV. PRAC. REM.CODE ANN. § 33.004(e); *see also Kimbrell v. Molinet,* 288 S.W.3d 464, 470 (Tex.App.-San Antonio 2009, pet. filed) (Simmons, J., concurring) (discussing legislative history of Chapter 33 and balancing

of parties' rights under statutory scheme). In short, we conclude the movants' policy argument is without merit and did not prevent Lewis's joinder by the Chapas.

**2. Claims with Two–Year Limitations Period**

In their motion for summary judgment, Wells Fargo and Lewis also asserted that section 33.004(e) did not apply to the Chapas' claims governed by two-year statutes of limitations. The movants pointed out, "The amendments to Chapter 33, including § 33.004(e), became effective September 1, 2003." *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02, 2003 Tex. Gen. Laws 847, 898–99. The 2003 version governs all cases filed on or after July 1, 2003. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(c), 2003 Tex. Gen. Laws 847, 899.

Wells Fargo and Lewis further asserted, "It is well-settled that a new limitations statutory scheme cannot revive claims on which limitations had expired prior to enactment of the new statute." They averred, "In the instant case, the [Chapas'] claims with a two-year statute of limitations had already expired by September 1, 2003."

 It is undisputed that the following claims asserted by the Chapas against Lewis had a two-year statute of limitations: breach of the duty of good faith and fair dealing, negligent misrepresentation, negligence, and DTPA violations.[5] The movants asserted that, because these claims were time-barred when the 2003 amendments to Chapter 33 were enacted, the Chapas could not assert these causes of action against Lewis when they joined him pursuant to section 33.004(e). We agree.

---

**5.** The parties also agree that the other causes of action asserted by the Chapas against Lewis and Wells Fargo are subject to three- or four-year limitation periods.

In *Baker Hughes, Inc. v. Keco R. & D., Inc.*, the Texas supreme court reaffirmed "settled law" that, "after a cause has become barred by the statute of limitation, the defendant has a vested right to rely on such statute as a defense." 12 S.W.3d 1, 4 (Tex.1999) (citing *Wilson v. Work*, 122 Tex. 545, 62 S.W.2d 490, 490 (1933); *Cathey v. Weaver*, 111 Tex. 515, 242 S.W. 447, 453 (1922); *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 255 (1887)). The court continued, "To permit barred claims to be revived years later would undermine society's interest in repose, which is one of the principal justifications for statutes of limitations." *Id.* The court explained, "[W]e have written that a statute extending the limitations period of a claim already barred by limitations violates the Texas Constitution's prohibition against retroactive laws, which is article I, section 16." *Id.*

Here, the Chapas' claims against Lewis for breach of the duty of good faith and fair dealing, negligent misrepresentation, negligence, and DTPA violations accrued, as discussed above, on December 4, 2000. When the legislature enacted the 2003 amendments to Chapter 33, including section 33.004(e), these claims were already time-barred. At the time of 33.004(e)'s enactment, Lewis had a vested right to rely on the statutes of limitation barring these claims. *See id.* Reading section 33.004(e) to divest Lewis of that right violates article I, section 16 of the Texas Constitution. *See id.* Accordingly, the Chapas' time-barred claims for breach of the duty of good faith and fair dealing, negligent misrepresentation, negligence,

and DTPA violations may not, as a matter of law, be revived against Lewis pursuant to section 33.004(e). *See id.; see also Mann v. Jack Roach Bissonnet, Inc.*, 623 S.W.2d 716, 718–19 (Tex.Civ.App.-Houston [1st Dist.] 1981, no writ) (holding that legislature cannot extend limitations period for claims that are already time-barred).

### 3. Statutory Claims

 Civil Practice and Remedies Code section 33.002(a) provides that Chapter 33 applies to

(1) any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought; or

(2) any action brought under the Deceptive Trade Practices–Consumer Protection Act (Subchapter E, Chapter 17, Business & Commerce Code) in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought.

TEX. CIV. PRAC. REM.CODE ANN. § 33.002(a) (Vernon 2008). The movants argued that Chapter 33 does not apply to the Chapas' statutory claims asserted under the Texas Securities Act and the Texas Trust Act.[6] The movants' assertions are not supported by the weight of authority.

Article 33.002(a) provides that Chapter 33 applies to "any action based in tort." TEX. CIV. PRAC. REM.CODE ANN. § 33.002(a) (emphasis added). The Texas supreme court has applied Chapter 33 to statutory tort claims that do not include a separate

---

**6.** Wells Fargo and Lewis also assert on appeal that Chapter 33 does not apply to fraud claims. The movants did not raise this ground in the trial court to support summary judgment. As a result, we cannot reach this ground. The law is clear: we may not affirm a summary judgment on grounds "not ex-

pressly set out in the motion or response." *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993). In any event, the Chapter 33 has been held to apply to fraud claims. *See Isaacs v. Bishop*, 249 S.W.3d 100, 116 (Tex.App.-Texarkana 2008, pet. denied).

and conflicting legislative fault allocation scheme.[7] *Compare JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 705–06 (Tex.2008) (holding that Chapter 33 applied to UCC article 2 claims) *with Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 111 (Tex.2004) (declining to apply Chapter 33 to UCC article 3 conversion claims because article 3 contains "its own loss allocation scheme uniquely applicable to conversion claims involving negotiable instruments"); *see also Werner v. KPMG, L.L.P.*, 415 F.Supp.2d 688, 703 (S.D.Tex. 2006).

Here, the movants made no assertion in their motion for summary judgment that the Chapas' statutory claims are not "based in tort." Nor is there any argument that the subject statutes contained a separate and conflicting legislative fault allocation scheme. Accordingly, we conclude that section 33.004(e) applied to the Chapas' statutory claims asserted against Lewis. *See JCW Elecs.*, 257 S.W.3d at 705–06.

### 4. Respondeat Superior

■ In the trial court and on appeal, the Chapas contend that, to the extent that section 33.004(e) applies to Lewis, it also applies to Wells Fargo, based on respondeat superior.[8] As a result, the Chapas contend that Wells Fargo remains a defendant in the lawsuit, regardless of whether it has a valid limitations defense.

In their opening brief, the Chapas contend that "the doctrine of respondeat superior clearly and most logically applies to the context of Section 33.004(e)." They argue, "Permitting a claim against an employer based on vicarious liability should be revived if the claim against the employee is revived as well." The Chapas do not cite, nor can we locate, any authority determining this issue. Nor does Chapter 33 generally, or section 33.004(e) specifically, address the interplay between the proportionate liability scheme and claims based on theories of vicarious liability. *See generally Fid. & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank*, No. H–04–2833, 2006 WL 870683, at *5 (S.D.Tex. Mar. 31, 2006) (noting that "courts and commentators alike have recognized the difficulty in reconciling the language of the Proportionate Responsibility Statute with certain causes of actions, including vicarious and/or derivative liability actions"); D. Underwood & Michael D. Morrison, *Apportioning Responsibility in Cases Involving Claims of Vicarious Derivative, or Statutory Liability for Harm Directly Caused by the Conduct of Another*, 55 Baylor L.Rev. 617, 647–48 (2003) (writing that the legislature, in enacting the original and present versions of section 33.003, did not consider derivative or vicarious liability cases).

■ As noted by the El Paso Court of Appeals, "The purpose of Chapter 33 … is to apportion the damages for which joint tortfeasors are liable, according to the per-

---

7. Wells Fargo and Lewis cite *Davis v. Estridge*, 85 S.W.3d 308, 311 (Tex.App.-Tyler 2001, pet. denied), for its conclusion that Chapter 33 does not apply to a statutory fraud claim because the DTPA was the only statute expressly mentioned in section 33.002(a). We do not find *Davis* persuasive. Since *Davis*, the Texas supreme court has held that Chapter 33 applied to a statutory tort claim in *JCW Electronics, Inc. v. Garza*, 257 S.W.3d 701, 705–06 (Tex.2008). Moreover, the express language of section 33.002(a) provides that

Chapter 33 applies "to *any* action based in tort." Tex. Civ. Prac. Rem.Code Ann. § 33.002(a) (Vernon 2008) (emphasis added).

8. In the trial court, the Chapas also asserted that Wells Fargo was liable for Lewis's conduct based on Wells Fargo's alleged negligent failure to supervise Lewis. The Chapas do not argue or brief this theory of vicarious liability on appeal.

centage of fault." *Gilcrease v. Garlock, Inc.,* 211 S.W.3d 448, 457 (Tex.App.-El Paso 2006, no pet.); *see also* TEX. CIV. PRAC. REM.CODE ANN. § 33.003 (directing that jury apportions responsibility among only those persons whose conduct caused or contributed to cause harm on which damages sought). Pursuant to the doctrine of respondeat superior, an employer will be held vicariously liable for the negligence of its employee regardless of any allegation of fault on the part of the employer. *See Bedford v. Moore,* 166 S.W.3d 454, 461 (Tex.App.-Fort Worth 2005, no pet.). Allowing a plaintiff to use section 33.004(e) to revive a time-barred claim against a party, not for its tortious conduct, but merely based on its relationship with a tortfeasor, is incongruent with Chapter 33's statutory scheme to apportion responsibility based on the person's harm-causing conduct. *Cf. Rosell v. Cent. W. Motor Stages, Inc.,* 89 S.W.3d 643, 656–57 (Tex.App.-Dallas 2002, pet. denied) (explaining that, "while the statute on its face requires all defendants to be included in the apportionment question, it would not be proper for an employer to be included along with the driver if its only responsibility was that of respondeat superior").

Moreover, section 33.004(e) permits a claimant to join a designated "responsible third party." Under § 33.011(6), a "responsible third party"

> means [in pertinent part] any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these.

TEX. CIV. PRAC. REM.CODE ANN. § 33.011(6). A party that is liable based purely on respondeat superior does not fit this definition. The definition further underscores that section 33.004(e) should not be used to hold a party liable when no allegations have been made that the party caused or contributed to the claimant's damages. Accordingly, we conclude that the Chapas' time-barred claims against Wells Fargo based on respondeat superior are not revived by section 33.004(e).

### No Evidence Motion for Summary Judgment

 In their third issue, the Chapas contend that summary judgment cannot be based on Lewis's and Wells Fargo's no-evidence motion for summary judgment. The movants filed a no-evidence motion for summary judgment with respect to the Chapas' claim that Lewis and Wells Fargo assisted Pena in his breaching his fiduciary duty to the Chapas.[9]

 "When a third party knowingly participates in the breach of a fiduciary duty, the third party becomes a joint tortfeasor and is liable as such." *Kastner v. Jenkens & Gilchrist, P.C.,* 231 S.W.3d 571, 580 (Tex.App.-Dallas 2007, no pet.). In their fourth amended petition, the Chapas

---

9. As mentioned, unlike all their other claims against Wells Fargo and Lewis, the Chapas' claim for assisting Pena in the breach of his fiduciary duty was not brought by the Chapas on behalf of Pena. Accordingly, the accrual date for this claim would be different from the accrual date of Chapas' other claims. No argument or evidence has been offered to show the accrual date for the Chapas' assisting-in-breach-of-fiduciary-duty claim. Therefore, summary judgment based on limitations was not proper on this claim. Although the trial court's order identified limitations as the only basis for summary judgment, we may consider, in the interest of justice, grounds that the movant preserved for review and on which the trial court did not rule. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996).

asserted a breach of fiduciary duty claim against Pena, individually, and against Wells Fargo and Lewis as joint tortfeasors. The Chapas claimed that Wells Fargo and Lewis, as third parties, knew that Pena was committing a breach of his fiduciary duty. They alleged that Wells Fargo and Lewis knowingly participated in Pena's breach. The Chapas further alleged that Wells Fargo and Lewis became joint tortfeasors with Pena. They asserted that, as a result, Wells Fargo and Lewis are liable for participating in Pena's breach of trust. *See Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (1942); *Denson v. Dallas County Credit Union*, 262 S.W.3d 846, 851 (Tex.App.-Dallas 2008, no pet.).

In their no-evidence summary judgment motion, Wells Fargo and Lewis alleged that there is no evidence that their conduct, separate from Pena's conduct, breached a duty to the Chapas. In so doing, the movants misinterpreted the Chapas' cause of action. With regard to their assisting-in-breach-of-fiduciary-duty claim, the Chapas do not allege that Wells Fargo and Lewis breached a duty that they owed to the Chapas. Rather, they allege that Wells Fargo and Lewis knowingly assisted Pena in breaching his fiduciary duty to the Chapas. Indeed, to succeed on their assisting-in-breach-of-fiduciary-duty claim, the Chapas need not show that Wells Fargo and Lewis owed them a fiduciary duty or that Wells Fargo's and Lewis's conduct breached such a duty. *See Denson*, 262 S.W.3d at 851.

In a no-evidence motion for summary judgment, the movant must state the elements as to which there is no evidence for a claim. Tex.R. Civ. P. 166a(i); *Roventini v. Ocular Sciences, Inc.*, 111 S.W.3d 719, 722 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (noting that "motion must specify which essential elements of the opponent's claim or defense lack supporting evidence"). Here, the only element identified by the movants as entitling them to summary judgment is not an element of the Chapas' assisting-in-breach-of-fiduciary-duty claim, as pleaded.[10] Accordingly, summary judgment cannot be properly granted on the movants' no-evidence summary judgment motion. *See Denson*, 262 S.W.3d at 851 (concluding that no-evidence summary judgment erroneously granted on assisting-in-breach-of-fiduciary-duty claim because movant mischaracterized duty element of claim).

## Conclusion

Based on the record and the foregoing analysis, we summarize our conclusions as follows:

- The Chapas' claims against Wells Fargo and Lewis, asserted on behalf of Pena, accrued on December 4, 2000.
- The Chapas' claims against Wells Fargo and Lewis, asserted on behalf of Pena, were time-barred when suit was filed.
- The Chapas' claims against Lewis for breach of fiduciary duty, fraud, and violating the Texas Securities Act were revived by Civil Practices and Remedies Code section 33.004(e).
- Because they were time-barred when the statute was enacted, the Chapas' claims against Lewis for breach of the duty of good faith and fair dealing,

**10.** In the trial court, Wells Fargo's and Lewis's no-evidence motion for summary judgment also identified other elements on which there was no evidence. On appeal, the parties now disagree only regarding the propriety of the movants' assertion that there is no evidence that the conduct of Wells Fargo and Lewis breached a duty that they owed to the Chapas. In their brief, Wells Fargo and Lewis argue that they owed no fiduciary duty directly to the Chapas. They contend that, if they owed any duty, it was owed only to Pena.

negligent misrepresentation, negligence, and DTPA violations, which have two-year statutes of limitations, are not revived by section 33.004(e).

- The Chapas' claims against Wells Fargo, based on respondeat superior, are not revived by section 33.004(e).
- The Chapas' claims against Wells Fargo and Lewis for assisting Pena in breaching his fiduciary duty are not time-barred, and the no-evidence motion for summary judgment on this claim should not have been granted.
- The trial court properly granted summary judgment based on limitations with regard to the Chapas' claims against Wells Fargo for breach of fiduciary duty, fraud, breach of the duty of good faith and fair dealing, negligent misrepresentation, negligence, and violating the DTPA and the Texas Securities Act.
- The trial court did not properly grant summary judgment with regard to the Chapas' claim against Wells Fargo for assisting Pena in the breach of his fiduciary duty.
- The trial court properly granted summary judgment based on limitations with regard to the Chapas' claims against Lewis for breach of the duty of good faith and fair dealing, negligent misrepresentation, negligence, and DTPA violations.
- The trial court did not properly grant summary judgment with regard to the Chapas' claims against Lewis for breach of fiduciary duty, fraud, violating the Texas Securities Act, and assisting Pena in the breach of his fiduciary duty.

Accordingly, we affirm the judgment of the trial court to the extent that it grants summary judgment on the Chapas' claims against Wells Fargo for breach of fiduciary duty, fraud, breach of the duty of good faith and fair dealing, negligent misrepresentation, negligence, and violating the DTPA and the Texas Securities Act. We also affirm the judgment of the trial court to the extent that it grants summary judgment on the Chapas' claims against Lewis for breach of the duty of good faith and fair dealing, negligent misrepresentation, negligence, and DTPA violations.

We reverse the judgment of the trial court to the extent that it grants summary judgment on the Chapas' claims against Wells Fargo for assisting Pena in breaching his fiduciary duty. We also reverse the judgment of the trial court to the extent that it grants summary judgment on the Chapas' claims against Lewis for breach of fiduciary duty, fraud, violating the Texas Securities Act, and assisting Pena in breaching his fiduciary. We remand the case for further proceedings.