In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00350-CV
_____

**LAUREL SMITH, Appellant**

**V.**

**2005 TOWER LLC, Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 22-07-09437-CV**

**MEMORANDUM OPINION**

This is an interlocutory appeal from an order denying a motion to dismiss

under the Texas Citizens' Participation Act (TCPA), which is codified in Chapter 27

of the Texas Civil Practice and Remedies Code. Underlying the order denying the

motion to dismiss is a guardianship proceeding initiated by Gavin Clarkson

("Gavin") on behalf of his mother, Martha Clarkson ("Martha"), who Gavin alleged

1

was partially incapacitated. Laurel Smith ("Smith"), a guardian ad litem appointed to represent Martha's interests, filed a petition for declaratory judgment asking the guardianship court to determine whether Martha lacked capacity to convey a duplex (the Property) that she owned in Travis County to 2005 Tower LLC (Tower). Smith also filed a notice of lis pendens, putting the public on notice of ongoing litigation about the duplex. After Smith filed the notice of lis pendens, Tower sued Smith for filing a fraudulent lien under Section 12.002(a), for tortious interference with a contract, and to quiet title. Smith moved to dismiss each claim under the TCPA, but the trial court denied the motion and awarded Tower attorney's fees for responding to the motion.

In two issues, Smith challenges the trial court's order denying her motion to dismiss. First, Smith contends the trial court erred in denying the motion because she established the TCPA entitles her to dismissal of each of Tower's claims. Second, Smith contends the trial court abused its discretion in awarding Tower attorney's fees by finding her motion frivolous and solely intended to delay. Concluding the TCPA entitles Smith to dismissal of Tower's fraudulent lien under Section 12.002(a) and tortious interference claims, we affirm in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

2

## BACKGROUND

### A. Underlying Litigation: Guardianship Lawsuit

This appeal involves two separate lawsuits. The first lawsuit, which we identify as the "Guardianship Lawsuit," was styled *In the Guardianship of Martha Atelia Clarkson, an Incapacitated Adult,* in the County Court at Law No. 2 of Montgomery County, Texas. It was started in September 2020 by Gavin, who filed an Application for Appointment of Permanent Guardian of the Person and Estate (Application for Guardianship), seeking guardianship over his eighty-one-year-old mother, Martha. Gavin alleged that Martha was "partially without capacity" to manage, among other things, the Property.

A week before Gavin filed the Application for Guardianship, a physician diagnosed Martha with dementia. The physician signed a Certificate of Medical Examination (CME) stating that Martha was partially incapacitated. The physician observed, for instance, that Martha had cognitive deficits preventing her from responsibly making complex business and financial decisions. After Gavin filed the Application for Guardianship, at least two more physicians performed a mental examination on Martha. In February 2021, for instance, a second physician signed a CME stating Martha was partially incapacitated. Like the first physician, the second

physician noted that Martha had cognitive deficits preventing her from responsibly making complex business and financial decisions.

In October 2020, the guardianship court appointed an attorney ad litem to represent Martha, and the attorney ad litem filed an answer contesting Gavin's Application for Guardianship. *See* Tex. Est. Code Ann. § 1054.001 (providing that in a proceeding for the appointment of a guardian, "the court shall appoint an attorney ad litem to represent the proposed ward's interests, including the proposed ward's expressed wishes[]"). A year later, after discharging Martha's first attorney ad litem, the guardianship court appointed Martha's second attorney ad litem, who moved to dismiss Gavin's Application for Guardianship because Martha's CMEs demonstrated her statutory durable power of attorney appointing Gavin her agent was more appropriate, and less restrictive, than guardianship.

In January 2022, Gavin nonsuited his Application for Guardianship with prejudice, and the guardianship court signed an Order Approving Gavin's Nonsuit. The Order Approving Gavin's Nonsuit functioned as a final judgment because Gavin's nonsuit rendered all claims opposing his Application for Guardianship moot, and at that time, no other applications for guardianship had been filed. That said, in February 2022, a court-appointed investigator filed a Motion to Reinstate and Retain Case on Docket along with an Application for Guardianship. Although

4

the guardianship court never signed an order reinstating the case, over the next four months, the guardianship court behaved as if the case had been reinstated.

In February 2022, for instance, the guardianship court signed an Amended Order appointing a guardian ad litem for Martha. *See id*. § 1054.051(a) (stating "the judge may appoint a guardian ad litem to represent the interests of an incapacitated person in a guardianship proceeding[]"). In April 2022, after discharging that guardian ad litem, the guardianship court signed an order appointing Smith, an attorney, to be Martha's successor guardian ad litem. The order stated Smith "is appointed as Successor Guardian Ad Litem to continue as such until further order of this Court." The order also substituted Smith "in on all the pleadings filed by [Martha's previous guardian ad litem]."

One of Smith's duties as guardian ad litem was to investigate whether a guardianship was necessary for Martha by reviewing her financial, medical, psychiatric, and personal records. During her investigation, Smith discovered Martha had executed various documents, during the guardianship proceeding, transferring her interests in real property. For instance, in March 2021, Martha executed a General Warranty Deed conveying the Property to Tower, a limited liability company formed by Gavin. Therefore, Smith filed a Petition for Declaratory Judgment, alleging that "it has become necessary to construe certain contracts,

5

deeds, and other writings because disputes concerning [Martha's] capacity to contract and her ability to make complex business decisions have existed between the parties to this matter since September of 2020." Smith requested, among other things, a declaration as to the validity of the General Warranty Deed, considering the CMEs declaring Martha partially incapacitated—and unable to responsibly make complex business decisions—around the time she executed the document.

Along with her Petition for Declaratory Judgment, Smith filed a Notice of Lis Pendens against the Property, which was recorded in the real property records of Travis County. The Notice of Lis Pendens states that ongoing disputes exist "as to whether [Martha] had capacity to transact business and manage her property." It also states that, Smith filed the Petition for Declaratory Judgment, in her capacity as Martha's guardian ad litem, requesting the guardianship court "declare the title and ownership to [the Property], the validity of any documents signed by [Martha] or transactions entered into by her, as well as the rights and remedies of each party with respect to [the Property]."

The guardianship court never ruled on Smith's Petition for Declaratory Judgment. In July 2022, the guardianship court filed a Notice Regarding Plea to the Jurisdiction in response to a Plea to the Jurisdiction and Motion to Dismiss filed by Gavin. The guardianship court explained that after signing the Order Approving

6

Gavin's Nonsuit, it never signed an order granting the court-appointed investigator's Motion to Reinstate and Retain Case on Docket before the motion was overruled by operation of law. Thus, the guardianship court found it "lack[ed] jurisdiction to take any [further] action in this closed and dismissed cause." The guardianship court also found it lacked jurisdiction to render orders related to the court-appointed investigator's Application for Guardianship, including the order appointing Smith to be Martha's successor guardian ad litem.

## B. Current Litigation: Tower Lawsuit

In May 2022—before Smith filed the Notice of Lis Pendens in the Guardianship Lawsuit—Tower executed a Residential Sales Contract to sell the Property. Tower was set to close the Residential Sales Contract on or before July 25, 2022, but after Smith filed the Notice of Lis Pendens on June 23, 2022, a title underwriter issued Tower a list of requirements that had to be fulfilled before closing, including the release of the Notice Lis Pendens. Tower demanded Smith release the Notice of Lis Pendens but made the demand before the Notice Regarding Plea to the Jurisdiction was filed in the Guardianship Lawsuit, so Smith refused to release the Notice of Lis Pendens. When Tower failed to close the Residential Sales Contract, Tower blamed Smith.

7

On July 22, 2022, Tower sued Smith by filing an Original Petition with Application for Temporary Restraining Order, Application for Temporary Injunction Pendente Lite, and Application for Permanent Injunction, and Emergency Motion to Cancel Lis Pendens. Tower sued Smith for filing a fraudulent lien in violation of Section 12.002(a), seeking actual damages, exemplary damages, and attorney's fees. Tower sued Smith for tortiously interfering with the Residential Sales Contract, seeking actual damages, exemplary damages, and injunctive relief. Tower also sued Smith to quiet title, seeking declaratory relief and attorney's fees under the Uniform Declaratory Judgments Act (UDJA).

Smith filed an Answer to Tower's Petition, asserting a general denial and pleading affirmative defenses, including attorney immunity, the judicial-proceedings privilege, and immunity from civil damages under the Texas Estates Code. Smith also filed a Motion to Dismiss under the TCPA, asserting that each of Tower's claims concern her right to petition in the Guardianship Lawsuit by filing the Notice of Lis Pendens. Smith argued that the TCPA entitles her to dismissal because Tower failed to establish a prima facie case for each of its claims, and because she established affirmative defenses to each of Tower's claims as a matter of law. Tower filed a Response to Smith's Motion to Dismiss, asserting that it

established a prima facie case for each of its claims, and that Smith failed to establish affirmative defenses to its claims as a matter of law.

Along with her Motion to Dismiss, Smith submitted several documents from the Guardianship Lawsuit, including the Petition for Declaratory Judgment, the Notice of Lis Pendens, Gavin's Application for Guardianship, the order appointing her to be Martha's successor guardian ad litem, the CMEs from the physicians who performed Martha's mental examinations, the General Warranty Deed that Martha signed conveying the Property to Tower, and the Residential Sales Contract executed by Tower to sell the Property. Along with its Response, Tower submitted Gavin's affidavit and the Notice Regarding Plea to the Jurisdiction filed in the Guardianship Lawsuit.

The trial court held a hearing on Smith's Motion to Dismiss, but no further evidence was submitted. Following the hearing, the trial court signed an Order denying the Motion to Dismiss, finding it was "frivolous or solely intended to delay." After Smith filed a Notice of Appeal from the Order, Tower submitted written evidence supporting its attorney's fees for responding to the Motion to Dismiss, and the trial court signed another order awarding Tower $4,575 in attorney's fees. Smith then amended her Notice of Appeal to include the order awarding Tower attorney's fees.

## ANALYSIS

In two issues, Smith challenges the trial court's order denying her Motion to Dismiss. First, Smith contends the trial court erred in denying the motion because she established the TCPA entitles her to dismissal of each of Tower's claims. Second, Smith contends the trial court abused its discretion in awarding Tower attorney's fees by finding her motion frivolous and solely intended to delay.

### A. TCPA Framework

The TCPA protects citizens from retaliatory lawsuits meant to intimidate or silence them on matters of public concern. *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The TCPA's stated purpose is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). We construe the TCPA "liberally to effectuate its purpose and intent fully." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.011(b). We are mindful that the TCPA "does not abrogate or lessen any other defense, remedy, immunity, or privilege

10

available under other constitutional, statutory, case, or common law or rule provisions." *See id.* § 27.011(a).

Determination of a motion to dismiss under the TCPA is a "three-step decisional process." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). First, the reviewing court considers whether the moving party demonstrated that a legal action is based on or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). If the moving party satisfies that initial burden, the reviewing court proceeds to the second step, which is to consider whether the nonmoving party established by clear and specific evidence a prima facie case for each essential element of its claim in question. *See id.* § 27.005(c). If the reviewing court determines that the nonmoving party satisfied that burden, the court turns to the third step, which is to consider whether the moving party established an affirmative defense or other grounds for judgment as a matter of law. *See id.* § 27.005(d).

In determining whether a legal action is subject to dismissal under the TCPA, we review statutory construction issues de novo. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). Similarly, whether the parties met their respective burdens under the TCPA is a legal question that we review de novo. *See*

11

*Dall. Morning News*, 579 S.W.3d at 377. In our review, we consider the pleadings, evidence a court could consider in a motion for summary judgment, and supporting and opposing affidavits stating the facts on which liability or a defense is based. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); Tex. R. Civ. P. 166a.

**B. Step One: TCPA Applicability**

In issue one, Smith argues each of Tower's claims are based on her exercise of the right to petition, and we agree. "The TCPA broadly defines 'exercise of the right to petition' and sets out several ways in which a communication can implicate this right." *Mattress Firm, Inc. v. Deitch*, 612 S.W.3d 467, 485 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (citations omitted). "Exercise of the right to petition" includes "a communication in or pertaining to . . . a judicial proceeding[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.001(4)(A)(i). A "communication" "includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1).

Each of Tower's claims is based on the Notice of Lis Pendens filed by Smith. In its Original Petition, Tower alleged that "Smith's Notice of Lis Pendens is a fraudulent lien or claim against real property or an interest in real property under Section 12.002," and that Smith tortiously interfered with the Residential Sales Contract by filing the Notice of Lis Pendens. Tower also sued to quiet title, seeking

12

a declaration "that Tower owns [the Property] and that the Notice of Lis Pendens is wrongful and of no legal force and effect."

"A notice of lis pendens broadcasts 'to the world' the existence of ongoing litigation regarding ownership of the property." *Sommers for Ala. & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 753 (Tex. 2017) (quoting Tex. Prop. Code Ann. § 13.004(a)). "[A] lis pendens functions to provide constructive notice, avoid undue alienation of property, and facilitate an end to litigation." *Id.* (internal citations omitted). Therefore, Smith's filing of the Notice of Lis Pendens is "'a communication in or pertaining to'" a judicial proceeding and an exercise of the right to petition as defined by the TCPA. *See Howard v. Matterhorn Energy, LLC*, 628 S.W.3d 319, 332 (Tex. App.—Texarkana 2021, no pet.) (citation omitted) (filing pleadings in a lawsuit, along with a notice of lis pendens, is an exercise of the right to petition under the TCPA); *James v. Calkins*, 446 S.W.3d 135, 147–48 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (same); *see also Cavin v. Abbott*, 545 S.W.3d 47, 64 (Tex. App.—Austin 2017, no pet.) ("filing a lawsuit and transmitting documents relating to that proceeding" is an exercise of the right to petition under the TCPA).

## C. Step Two: Prima Facie Cases

Once Smith made the initial showing required under the TCPA, the burden shifted to Tower to establish by clear and specific evidence a prima facie case for each of its claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). A "prima facie case" "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Lipsky*, 460 S.W.3d at 590 (citation omitted). Clear and specific evidence requires "enough detail to show the factual basis" of the claim, but it does not: (1) "impose an elevated evidentiary standard[,]" (2) "categorically reject circumstantial evidence," or (3) "impose a higher burden of proof than that required of the plaintiff at trial." *Id.* at 590–91.

Pleadings are considered evidence for satisfying the TCPA burden. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *see also Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (explaining that under the TCPA, the trial court must consider pleadings whether they are formally offered as evidence or not). "'Conclusory statements'" and "[b]are, baseless opinions" do not create fact questions and are not "a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA." *Lipsky*, 460 S.W.3d at 592–93; *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.) (op. on reh'g) (citation

omitted) ("'Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case.'").

### 1. Tower failed to establish a prima facie case for its fraudulent lien claim under Section 12.002(a).

First, we address Tower's claim that Smith filed a fraudulent lien in violation of Section 12.002(a), which prohibits a person from making, presenting, or using a document or other record with:

(1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3) intent to cause another person to suffer:

(A) physical injury;

(B) financial injury; or

(C) mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a). A person who violates Section 12.002(a) is liable to each injured person for the greater of $10,000 or actual

15

damages, court costs, reasonable attorney's fees, and exemplary damages. *Id.* § 12.002(b).

In the context of Section 12.002(a), "fraudulent" means "'a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment.'" *MFG Fin., Inc. v. Hamlin*, No. 03-19-00716-CV, 2021 WL 2231256, at *4 (Tex. App.—Austin June 3, 2021, pet. denied) (mem. op.) (citing *Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 849 (Tex. App.—Texarkana 2010, no pet.)). Since a lien may be invalid and unenforceable but not necessarily fraudulent, to establish a fraudulent lien claim under Section 12.002(a), the claimant must do more than show the document is factually inaccurate; the claimant must show that the document was made, presented, or used to perpetrate a fraud. *See MFG Fin.*, 2021 WL 2231256, at *4 (citing *Walker*, 306 S.W.3d at 849).

In its Original Petition, Tower alleged that the Notice of Lis Pendens was fraudulent because it contained false statements. For instance, Tower alleged Smith falsely stated that she was acting in her capacity as Martha's guardian ad litem. According to Tower, the statement was false because the guardianship court never ordered Smith "to conduct litigation or take any actions with respect to litigation." However, the record contains no evidence that Smith was acting outside her

16

authority by filing the Notice of Lis Pendens or that Smith knew she was acting outside her authority.

The Texas Estates Code provides that "a guardian ad litem is an officer of the court[]" who is obligated to "protect the incapacitated person whose interests the guardian has been appointed to represent in a manner that will enable the court to determine the action that will be in that person's best interests." *See* Tex. Est. Code Ann. § 1054.054(a), (b). According to Tower, the order appointing Smith guardian ad litem authorized Smith to investigate Martha's financial, medical, psychiatric, and personal records, which Smith did by investigating the circumstances of Martha's execution of the General Warranty Deed conveying the Property to Tower. Following her investigation, Smith filed the Petition for Declaratory Judgment, along with the Notice of Lis Pendens, seeking judicial determinations about the validity of the General Warranty Deed, considering a physician declared Martha partially incapacitated and unable to responsibly make complex business decisions only a month before Martha executed the document.

Tower further alleged that Smith perpetrated fraud in the Notice of Lis Pendens by failing to disclose that the guardianship court lacked jurisdiction over the Guardianship Lawsuit. In support of its allegation, Tower submitted the guardianship court's Notice Regarding Plea to the Jurisdiction, which states the

17

guardianship court lacked jurisdiction over the Guardianship Lawsuit when Smith filed the Notice of Lis Pendens. That said, the Notice Regarding Plea to the Jurisdiction is not clear and specific evidence supporting Section 12.002(a)'s knowledge requirement, because the Notice is dated July 25, 2022, a month after Smith filed the Notice Lis Pendens on June 23, 2022. *See* Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a)(1). Tower also submitted Gavin's affidavit stating that Smith knew the guardianship court lacked jurisdiction by June 9, 2022, when Gavin filed the Plea to the Jurisdiction and Motion to Dismiss in the Guardianship Lawsuit. However, Gavin's conclusory statement, standing alone, is not clear and specific evidence that Smith knew the guardianship court lacked jurisdiction. *See id.*; *Serafine*, 466 S.W.3d at 358. We hold that Tower failed to establish a prima facie case for its fraudulent lien claim under Section 12.002(a). *See* Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a)(1).

## 2. Tower failed to establish a prima facie case for its tortious interference claim.

Next, we address Tower's claim that Smith tortiously interfered with the Residential Sales Contract by filing the Notice of Lis Pendens. "A claim for tortious interference with a contract consists of four elements: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) the willful and intentional interference caused damage; and (4) actual damage or loss occurred."

18

*Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 588 (Tex. 2017). Our analysis

focuses on the element of willful and intentional interference.

Smith pleaded the judicial-proceedings privilege as an affirmative defense to

Tower's claims. Texas recognizes an absolute privilege to communications made as

part of a judicial proceeding. *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 655 (Tex.

2015). As the Texas Supreme Court explained:

> The judicial-proceedings privilege is straightforward: Communications
> in the due course of a judicial proceeding will not serve as the basis of
> a civil action for libel or slander, regardless of the negligence or malice
> with which they are made. . . . Although commonly applied in
> defamation cases, the privilege prohibits any tort litigation based on the
> content of the communication at issue.
>
> The judicial-proceedings privilege is an absolute privilege that covers
> any statement made by the judge, jurors, counsel, parties or witnesses,
> and attaches to all aspects of the proceedings, including statements
> made in open court, pre-trial hearings, depositions, affidavits and any
> of the pleadings or other papers in the case. The privilege facilitates the
> proper administration of justice by promoting full and free disclosure
> of information by participants in judicial proceedings.

*Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021) (internal

quotations, citations, and ellipses omitted); *see Wilkinson v. USAA Fed. Sav. Bank*

*Tr. Servs.*, No. 14-13-00111-CV, 2014 WL 3002400, at *6 (Tex. App.—Houston

[14th Dist.] July 1, 2014, pet. denied) (mem. op.) ("The judicial proceedings

privilege is tantamount to immunity; where there is an absolute privilege, no civil

action in damages for oral or written communications will lie, even though the

language is false and uttered or published with express malice.") (internal quotations omitted).

Courts have applied the privilege to claims for tortious interference when those claims seek civil damages for defamatory communications in a judicial proceeding. *See Howard,* 628 S.W.3d at 333–34 (applying the judicial-proceedings privilege "to other torts, like business-disparagement and tortious-interference claims, when those claims are predicated on an allegedly defamatory act"); *5-State Helicopters, Inc. v. Cox*, 146 S.W.3d 254, 259 (Tex. App.—Fort Worth 2004, pet. denied) (applying judicial-proceedings privilege to tortious interference with contract claim when the plaintiff sought "defamation-type damages based on the allegedly libelous communications"). Courts have also applied the privilege to tortious interference claims seeking damages for defamatory statements in a notice of lis pendens. *See e.g., Howard*, 628 S.W.3d at 333–34 (holding a lis pendens is subject to the judicial-proceedings privilege).

Because filing a notice of lis pendens is a privileged communication, as a matter of law, Tower cannot establish a prima facie case that Smith willfully and intentionally interfered with the Residential Sales Contract. *See Dominguez v. Dominguez*, 583 S.W.3d 365, 373 (Tex. App.—El Paso 2019, pet. denied) ("[A] lis pendens is absolutely privileged in an action for tortious interference of contract and

20

does not constitute interference as a matter of law."); *River Plantation Cmty. Improvement Ass'n v. River Plantation Props., LLC*, No. 09-17-00451-CV, 2018 WL 4120252, at *7 (Tex. App.—Beaumont Aug. 30, 2018) (mem. op.) (stating "filing of a notice of lis pendens did not constitute a tort[]" and "was privileged"), *aff'd* No. 22-0733, 2024 WL 2983168 (Tex. June 14, 2024); *Liverman v. Payne-Hall*, 486 S.W.3d 1, 6 (Tex. App.—El Paso 2015, no pet.) (filing of a notice of lis pendens "causes no actual interference with the property beyond that which occurs from filing suit; it merely reiterates publicly available information related to a lawsuit"). Furthermore, since Tower's claims for injunctive relief are derivative of its tortious interference claim, Tower cannot establish a prima facie case for injunctive relief. *See Yalamanchili v. Mousa*, 316 S.W.3d 33, 39 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (stating a request for a permanent injunction was not a separate claim but merely a request for equitable relief).

### 3. Tower established a prima facie case to quiet title.

Last, we address Tower's claim to quiet title and its derivate claim for declaratory relief under the UDJA. A suit to quiet title is an equitable action to clarify ownership and remove any cloud on title to property. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007); *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). "The elements

21

of the cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied); *see Suniverse, LLC v. Universal Am. Mortg. Co., LLC*, No. 09-19-00090-CV, 2021 WL 632603, at *12 (Tex. App.—Beaumont Feb. 18, 2021, pet. denied) (mem. op.). "The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." *Essex Crane*, 371 S.W.3d at 388.

The UDJA is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, or other legal relations[.]" Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b). "'Parties may pursue a declaratory judgment action only 'if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought.'" *Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 883 (Tex. 2020) (quoting *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995)). The UDJA "does not enlarge a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009) (citations omitted).

Tower sued Smith to quiet title, requesting a declaration "that Tower owns [the Property] and that the Notice of Lis Pendens is wrongful and of no legal force and effect." Tower requested the same declaration under the UDJA. When an action for declaratory relief and a suit to quiet title are based on the same facts and request similar relief, they are both treated as one suit to quiet title. *Sw. Guar. Tr. Co. v. Hardy Rd. 13.4 Joint Venture*, 981 S.W.2d 951, 957 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Therefore, if Tower establishes a prima facie case to quiet title, it also establishes a prima face case for declaratory relief under the UDJA.

The record contains the General Warranty Deed Martha signed on March 26, 2021, conveying the Property to Tower. Since Gavin stated in his affidavit that Tower still holds title to the Property, Tower established a prima facie case that it has an interest in the Property. The record contains the Notice of Lis Pendens Smith filed against the Property in the Guardianship Lawsuit, and a lis pendens has been described as "a cloud on title[]" and "the functional equivalent of an involuntary lien[.]" *Countrywide Home Loans, Inc. v. Howard*, 240 S.W.3d 1, 5 (Tex. App.—Austin 2007, pet. denied). The record also contains the Notice Regarding Plea to the Jurisdiction declaring the Guardianship Lawsuit dismissed, which means the Notice of Lis Pendens is invalid. We hold that since the record contains clear and specific evidence that the controversy between the parties can be resolved by the declaration

23

sought—that Tower owns the Property and that the Notice of Lis Pendens is wrongful and of no legal force and effect—Tower established a prima facie case to quiet title and, incidentally, a prima facie case for declaratory relief under the UDJA.

Texas follows the American rule on attorney's fees, which provides that, generally, 'a party may not recover attorney's fees unless authorized by statute or contract.'" *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448 (Tex. 2016). The UDJA authorizes trial courts to award "costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 270 (Tex. 2021). In any event, "a party cannot use the [UDJA] as a vehicle to obtain otherwise impermissible attorney's fees." *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). In other words, "[a] party may not use a declaratory judgment action to seek the same relief afforded under another of its causes of action in order to obtain attorney's fees." *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 70 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citation omitted). Although Tower requested attorney's fees under the UDJA, attorney's fees are unavailable in a suit to quiet title or to remove a cloud on title. *See Sani v. Powell*, 153 S.W.3d 736, 745 (Tex. App.—Dallas 2005, pet. denied) (citation omitted). Since

Tower's claim under the UDJA is really one to quiet title, Tower failed to establish a prima facie case for attorney's fees under the UDJA.

## C. Step Three: Affirmative Defenses

Because Tower failed to establish a prima facie case for its fraudulent lien under Section 12.002(a) and tortious interference claims, the TCPA entitles Smith to dismissal of those claims, along with Tower's derivative claim for injunctive relief. At the same time, Tower established a prima facie case to quiet title and for declaratory relief, so the burden shifted back to Smith to establish an affirmative defense to those claims as a matter of law. According to Smith, she established the judicial-proceedings privilege, attorney immunity, and immunity from civil damages under section 1054.056 of the Estates Code as affirmative defenses to Tower's claims. We conclude, however, that those defenses do not bar Tower's claim to quiet title and its derivative claim for declaratory relief.

Again, the judicial-proceedings privilege bars claims based on communications related to a judicial proceeding when the claimant seeks defamation-type damages. *Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 689 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Although this privilege bars claims seeking civil damages for defamatory statements in a notice of lis pendens, the privilege does not bar claims seeking a declaration that a lis pendens is wrongful

25

or invalid. *See Mireskandari v. Casey*, 636 S.W.3d 727, 739 (Tex. App.—Dallas 2021, pet. denied) (stating judicial-proceedings privilege did not apply because the essence of the plaintiff's claim "was not damages but declaratory relief"); *Deuell*, 508 S.W.3d at 690  (noting judicial-proceedings privilege applies to other torts "when the essence of a claim is damages that flow from communications made in the course of a judicial proceeding" and the "party seeks damages that flow from alleged reputational harm, regardless of the type of claim alleged").

Attorneys have qualified immunity from civil liability, with respect to non-clients, for actions taken in connection with representing a client in litigation. *Dixon Fin. Servs., Ltd. v. Chang*, 325 S.W.3d 668, 673 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). As the Texas Supreme Court explained:

> [Attorney immunity] stems from the law's longstanding recognition that attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages. Attorney immunity is intended to ensure loyal, faithful, and aggressive representation by attorneys employed as advocates. When applying attorney immunity, we have stated that otherwise wrongful conduct by an attorney is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client.

*Landry's*, 631 S.W.3d at 47. (internal quotations and citations omitted). Assuming, without deciding, that attorney immunity protected Smith's actions as Martha's guardian ad litem, we conclude attorney immunity protected Smith from Tower's claims seeking civil damages—like Tower's claim for tortious interference—not

26

Tower's claims seeking declaratory relief—like Tower's claim to quiet title. *See id.* (stating that attorney immunity generally shields attorneys from liability to non-clients for damages without referencing other types of relief); *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481–82 (Tex. 2015) (same); *City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 633–34 (Tex. App.—Austin 2007, pet. denied) (prospective declaratory, injunctive, and mandamus relief not barred by immunity).

Smith also pleads immunity under section 1054.056 of the Estates Code, which provides "a guardian ad litem appointed . . . to represent the interests of an incapacitated person in a guardianship proceeding involving the creation, modification, or termination of a guardianship is not liable for civil damages arising from a recommendation made or an opinion given in the capacity of guardian ad litem." Tex. Est. Code Ann. § 1054.056(a). Since Section 1054.056 immunizes a guardian ad litem from claims seeking civil damages, not declaratory relief, we conclude Section 1054.056 does not bar Tower's claims against Smith to quiet title and for declaratory relief.

In sum, the TCPA entitles Smith to dismissal of Tower's claims for fraudulent lien under Section 12.002(a) and for tortious interference, including Tower's derivative claim for injunctive relief, but not to dismissal of Tower's claim to quiet title and its derivative claim for declaratory relief. We sustain Smith's first issue in

part and reverse the trial court's order denying Smith's Motion to Dismiss as to Tower's claims for fraudulent lien under Section 12.002(a), for tortious interference, and for injunctive relief. We overrule Smith's first issue in part, affirm the trial court's order denying Smith's Motion to Dismiss as to Tower's claim to quiet title and its derivative claim for declaratory relief, and remand those claims for further proceedings consistent with this opinion.

## D. Attorney's Fees Awards under TCPA

In issue two, Smith contends the trial court abused its discretion in awarding Tower attorney's fees by finding her Motion to Dismiss frivolous and solely intended to delay. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 441–42 (Tex. 2017) (addressing merits of attorney's fees issue in appealable interlocutory order from denial of TCPA motion "in the interest of judicial economy"). Generally, appellate courts review an award of attorney's fees under the TCPA for an abuse of discretion. *See Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied). "A trial court abuses its discretion by acting without reference to guiding rules and principles to such an extent that its ruling was arbitrary or unreasonable." *Landry's*, 631 S.W.3d at 46 (internal quotations and citation omitted).

If the trial court "finds that a motion to dismiss filed under [the TCPA] is frivolous or *solely* intended to delay, the court *may* award court costs and reasonable attorney's fees to the responding party." Tex. Civ. Prac. & Rem. Code Ann. § 27.009(b) (emphasis added). The term "frivolous" is not defined in the TCPA, "but the word's common understanding contemplates that a claim or motion will be considered frivolous if it has 'no basis in law or fact' and 'lacks a legal basis or legal merit.'" *Sullivan*, 551 S.W.3d at 857. (citations omitted). Since the TCPA entitles Smith to dismissal of Tower's claims for fraudulent lien under Section 12.002(a) and for tortious interference, we conclude the trial court abused its discretion in finding Smith's Motion to Dismiss frivolous or solely intended to delay. *See, e.g., Heavenly Homes of S. Tex., LLC v. Infinity Custom Constr., LLC*, No. 13-21-00298-CV, 2022 WL 2069232, at *8 (Tex. App.—Corpus Christi-Edinburg June 9, 2022, no pet.) (mem. op.) ("Given our determination herein that the motion to dismiss should have been granted in part, we further conclude that the motion to dismiss was not frivolous or solely intended to delay."). We sustain Smith's second issue and reverse Tower's attorney's fees award.

That said, the TCPA mandates the trial court award attorney's fees to Smith. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1). Under the TCPA, if the trial court grants dismissal of a legal action, the trial court (1) is required to award the

moving party court costs and reasonable attorney's fees incurred in defending against the action and (2) may also award sanctions against the party who brought the legal action as the court determines sufficient to deter the party from bringing similar actions. *See id*. We hold that since attorney's fees are mandatory even if the TCPA movant is only partially successful, Smith is entitled to the attorney's fees she incurred defending against Tower's claims for fraudulent lien under Section 12.002(a) and for tortious interference. Thus, we remand the case with instructions to award court costs and reasonable attorney's fees to Smith and to consider whether to award sanctions to Tower. *See id*. § 27.009(a).

## CONCLUSION

The TCPA entitles Smith to dismissal of Tower's claims for fraudulent lien under Section 12.002(a) and for tortious interference, including Tower's derivative claim for injunctive relief, but not to dismissal of Tower's claim to quiet title and its derivative claim for declaratory relief. Having sustained Smith's first issue in part, we reverse the trial court's order denying Smith's Motion to Dismiss as to Tower's claims for fraudulent lien under Section 12.002(a), for tortious interference, and for injunctive relief. Having overruled Smith's first issue in part, we affirm the trial court's order denying Smith's Motion to Dismiss as to Tower's claim to quiet title and its derivative claim for declaratory relief.

30

We also conclude the trial court abused its discretion in finding Smith's Motion to Dismiss "frivolous or solely intended to delay" and in awarding Tower attorney's fees for responding to the Motion to Dismiss. Having sustained Smith's second issue, we also reverse Tower's attorney's fees award. We remand the case with instructions to award court costs and reasonable attorney's fees to Smith but only to the extent consistent with this opinion. *See id*. § 27.009(a).

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

W. SCOTT GOLEMON
Chief Justice

Submitted on June 30, 2023
Opinion Delivered August 1, 2024

Before Golemon, C.J., Johnson and Chambers, JJ.